UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

JENNIFER RODRIGUEZ, individually, and as the natural
Mother and lawful guardian of PATRICK ALFORD, JR.,
An infant minor.                                                    10 CV 4661 (JG)(SMG)

                                                                    AMENDED
                          Plaintiff                                 COMPLAINT
                                                                    AND JURY
          -against-                                                 DEMAND

CITY OF NEW YORK
NATALIA ROSADO, individually and in her capacity
As a Child Protective Specialist for Administration for Children's Services
ROBERT SALEMI, individually and in his capacity as a Supervisor of
Child Protective Specialists for Administration for Children's Services
ST VINCENT'S SERVICES, INCORPORATED
CARLENE ANDERSON, individually and in her capacity as a Case Worker
For Defendant St. Vincent's Services, Incorporated
ZOILA VILLALTA individually and in her capacity as a supervisor of case
Workers for Defendant St. Vincent's Services, Incorporated,
LIBRADA MORAN,

                          Defendants.
-------------------------------------------------------------------------x

PRELIMINARY STATEMENT

1.          This is a Civil Rights action in which Plaintiff JENNIFER
            RODRIGUEZ, individually, and as the mother and lawful guardian
            of PATRICK ALFORD, JR., an infant minor, seeks redress from the,
            Natalia Rosado, individually and in her capacity as a Child
            Protective Specialist at the Administration for Children's Services,
            Robert Salemi, individually and in his capacity as a Supervisor at the
            Administration for Children's Services, St. Vincent's Incorporated,
            Carlene Anderson, individually and in her capacity as a case worker
            at St. Vincent's Services and Zoilla Villalta supervisor at St.
            Vincent's Services, for the violation of their rights secured 42 U.S.C.

1

Section 1983 and of the rights secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and or rights secured under the laws and the Constitution of the State of New York.

## JURISDICTION

2.       Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3), this being an action seeking redress for the violation of Plaintiffs Constitutional and Civil Rights. The amount of damages in controversy exceeds Seventy Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

3.       Plaintiffs claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

4.       The Plaintiff further invokes this Courts pendant jurisdiction pursuant to 28 U.S.C. § 1367 (a), over any and all State claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

5.       The Plaintiff demands a trial by jury on each and every one of the claims pleaded herein.

## VENUE

6.       Venue is proper for the United State District Court of the Eastern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## PARTIES

7.          Plaintiff JENNIFER RODRIGUEZ is a United States Citizen and resident of the United States and is at all times herein relevant is a resident of the State of New York, having an address at 80 Van Buren Street, 2nd Floor, Staten Island, New York 10301.

7a.         Plaintiff PATRICK ALFORD, JR., (hereinafter, "Patrick,") is an infant minor having been born on November 28, 2002, is a United States citizen and resident of the United States and is at all times herein relevant is a resident of the State of New York, having an address at 80 Van Buren Street, 2nd Floor, Staten Island, New York 10301.

8.          Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain the Administration for Children's Services which acts as its agent in the area of protecting the safety and welfare of children within the City of New York and for providing parents, foster parents, foster care agencies, and its own employees with the resources and guidance to carry out its mission to protect children within its jurisdiction, and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of the Administration for Children's Services and the employment of attorneys, investigators, case workers and others as said risk attaches to the public consumers of the services provided by defendant Administration for Children's Services.

9.          Defendant Natalia Rosado was at all times mentioned herein, a "child protective specialist" employed by City of New York through the Administration for Children's Services, and at all relevant times, she acted under color of state law and is herein sued in her individual capacity. Rosado's conduct violated clearly established

3

constitutional rights with respect to liberty and privacy interests in the **eventual return of a child in municipal care to his biological mother,** and it was objectively unreasonable for Rosado to believe that being deliberately indifferent to complaints and reports that foster care placement is inadequate given a child's prior attempts to run away from foster care and the child's expressions of suicidal ideation.

9a.    Defendant Robert Salemi was at all times herein mentioned a supervisor child protective specialist employed by City of New York through the Administration for Children's Services, at all relevant times, he acted under color of state law and is herein sued in his individual capacity. **Salemi's** conduct violated clearly established constitutional rights with respect to liberty and privacy interests in t he **eventual return of a child in municipal care to his biological mother,** and it was objectively unreasonable for Salemi to believe that being deliberately indifferent to complaints and reports that foster care placement is inadequate given a child's prior attempts to run away from foster care and the child's expressions of suicidal intention.

10.    Defendant ST. VINCENTS SERVICES INCORPORATED is a New York Corporation having an address at 66 Boerum Street, Brooklyn, New York 11206. At all times herein, St. Vincent's Services was authorized to business in the State of New York, and at all relevant times, was a state actor for Section 1983 purposes.

11.    At all times herein, St. Vincent's Services, Incorporated was a New York Limited Liability Company authorized to business in the State of New York.

12.                    At all times herein, St. Vincent's Services, Incorporated was a New York Not for Profit Corporation authorized to do business in the State of New York.

13.                    At all times herein, St. Vincent's Services, Incorporated was a foreign corporation authorized to do business in the State of New York, conducted business in the State of New York and derived substantial revenue from the State of New York.

14.                    At all times herein. St. Vincent's Services, Incorporated was a partnership authorized to do business in the State of New York.

15.                    At all times herein, St. Vincent's Services, Incorporated was and is a foster care agency duly existing under and by virtue of the laws of the State of New York and operates under the color of state law. By virtue of its contract with defendant City of New York to place, monitor, supervise and protect foster children, and to defend and indemnify the City of New York for causes of action arising out of said contract, defendant St. Vincent's Services is a state actor for Section 1983 purposes.

16.                    At all times herein relevant St. Vincent's Services was an "authorized agency" as defined in New York Social Services Law § 371.

17.                    At all times herein, defendant Carlene Anderson was employed as a caseworker at defendant St. Vincent's Services, and was supervised by defendant Zoilla Villalta. By virtue of her employment with defendant St. Vincent's Services, and St. Vincent's contract with the City of New York, defendant Carlene Anderson worked and operated under color of state law, and is a state actor for Section

5

1983 purposes. Anderson's conduct violated clearly established constitutional rights with respect to liberty and privacy interests in the expected and eventual return of a child in municipal care to his biological mother, and it was objectively unreasonable for Anderson to believe that being deliberately indifferent to complaints and reports that foster care placement is inadequate given a child's prior attempts to run away from foster care and the child's expressions of suicidal ideation.

18.     At all times herein, defendant Zoilla Villalta was employed as a supervisor at defendant St. Vincent's Services. By virtue of her employment with defendant St. Vincent's Services and said defendants' contract with the City of New York, defendant Zoilla Villalta worked and operated under color of state law, and is a state actor for Section 1983 purposes. Villalta's conduct violated clearly established constitutional rights with respect to liberty and privacy interests in the expected and eventual return of a child in municipal care to his biological mother, and it was objectively unreasonable for Villalta to believe that being deliberately indifferent to complaints and reports that foster care placement is inadequate given a child's prior attempts to run away from foster care and the child's expressions of suicidal ideation.

19.     At all times herein defendant LIBRADA MORAN, was a natural person having an address at 130 Vandalia Avenue, 11B, Brooklyn, New York, 11239.

**COMMON ALLEGATIONS**

20.     On or about December 29, 2009, plaintiff Jennifer Rodriguez called defendant Administration for Children's Services to assist her in the care of her child Jailene Alford, born April 9, 2005.

6

21.     On or about December 29, 2009, upon information and belief, employees of Administration for Children's Services removed infant Jailene Alford from Jennifer Rodriguez' home located at 80 Van Buren Street, Staten Island New York.

22.     On or about December 29, 2009, upon information and belief, defendant Natalia Rosado under the supervision of Robert Salemi, removed infant Patrick Alford, Jr. from the home of Blanca Toledo, his mother's aunt in Brooklyn, New York.

23.     At all times herein, defendants City of New York, Villalta, Rosado, Salemi, St. Vincent's Services, Anderson and Villalta were acting under color of law and in their official and individual capacities as persons and entities charged with the placement, safety, monitoring and supervision of children placed in foster care.

24.     At some time between December 29, 2009 and January 6, 2010, City of New York contracted defendant St. Vincent's Services, Incorporated to provide foster care services for the subject children Jailene Alford and Patrick Alford, Jr.

25.     During this time period, defendants City of New York, Villalta, Rosado, Salemi, and Anderson were assigned the task of supervising the placement, care and safety of the subject children during their placement in foster care.

26.     During this time period, defendants Villalta and Anderson were assigned the task of supervising the care and safety of the subject children during their placement in foster care with defendant St. Vincent's Services.

7

27.        At some time between December 29, 2009 and January 6, 2010 defendants City of New York, Villalta, Rosado, Salemi, St. Vincent's Services, and Anderson placed the subject children Jailene Alford and Patrick Alford, Jr. in the care of defendant Librada Moran at her residence located at 130 Vandalia Street, 11B, Brooklyn, New York.

28.        Upon information and belief based on official court records and statements made by Defendants, all the defendants were aware, or should have been aware that Patrick was extremely distraught at his placement in foster care with defendant Librada Moran.

29.        Indeed, Librada Moran, the foster mother, regularly informed defendant Anderson of Patrick's distraught behavior and comportment.

30.        Sometime during the course of his placement in Moran's care, Patrick tried to run off of the train and he was physically restrained by defendant Moran. Moran promptly and contemporaneously, informed defendant Carlene Anderson about: a) Patrick's attempt to run away; b) Patrick's apparent desire to runaway; and c) Patrick's propensity to try to run away.

31.        Further, Patrick exhibited distraught behavior protesting his placement, including physically assaulting himself and physically assaulting other children in the foster home. As well, Patrick engaged in destructive acts towards property in the foster house.

32.        Moran informed a St. Vincent's foster worker, Ms. White, when she was present for the care of another foster child, and defendant

8

Anderson, of Patrick's distraught behavior protesting his placement.

33.　　　　　On or about Thursday, January 21, 2010, defendant Anderson paid a customary visit to the home where Patrick had been placed.  Whilst there, Anderson told Patrick that he would not yet be able to go home. Then, in Anderson's presence, Patrick tried to open the front door and to run away from the house. However, he was restrained by defendant Anderson and the foster mother, Librada Moran.

34.　　　　　Later during the visit, Patrick began to scream in defendant Anderson's presence that he wanted to go home.  Patrick then ran into the kitchen and grabbed a large pair of scissors from a knife set on the counter, and tried to cut open his arm with the scissors. Moran restrained Patrick and prevented him from harming himself, and defendant Anderson placed the knife set in a cabinet above the refrigerator so that Patrick could not reach it.

35.　　　　　Upon information and belief, Anderson contemporaneously informed her supervisor, Villalta of Patrick's comportment and attempts to run away.

36.　　　　　Instead of arranging for Patrick to be taken to an emergency room for an immediate evaluation based upon his attempt to hurt himself, Anderson merely offered to the foster mother that Patrick would get a psychiatric evaluation the following Monday.

37.　　　　　Upon information and belief, based on statements made by defendants and official court records, all the defendants were aware or should have been aware that Patrick was trying to run away from his foster care home.

38.     Upon information and belief, based on statements from witnesses, defendants were notified that Patrick required care greater than he was receiving in foster care.

39.     Upon information and belief, based on statements from witnesses, defendant Librada Moran stated that Patrick was trying to run away from the "day" he came into foster care.

40.     Upon information and belief, based on statements made from witnesses, defendant's City of New York, Villalta, Rosado, Salemi, St. Vincent's Services, and Anderson placed Patrick Alford, Jr. with Librada Moran despite being aware that Ms. Moran did not speak English and the child did not speak Spanish.

41.     Upon information and belief based on statements made from witnesses, defendant's City of New York, Rosado, Salemi, St. Vincent's Services, Anderson, Villalta and Librada Moran were aware, or should have been aware that Patrick Alford, Jr. engaged in behavior and/or made statements evincing an intent to commit suicide.

42.     Upon information and belief, the defendants failed to take appropriate action to provide Patrick Alford, Jr. with the care necessary to keep him safe from harm, despite having been notified and aware of the dangerous condition the child was in.

43.     On or about the 17th day of May 2010 the plaintiff served the defendant, City of New York with a notice of claim in the within action.

44.     Over 90 days have elapsed since the service of plaintiff's notice of

claim and defendant the Administration for Children's Services have neglected and/or refused to compromise said claim.

45.        These claims are submitted within the time provided by law.

46.        The causes of action which are the subject of this litigation arose in the City and State of New York, Counties of Kings and Richmond, all within the jurisdiction of the United States District Court, Eastern District of New York.

47.        At the time and place aforesaid, under the color of state law, the infant plaintiff was under the supervision, care and custody of defendants City of New York, Rosado, Salemi, St. Vincent's Services, Anderson, Villalta and their agents, servants and/or employees.

48.        At the time and place aforesaid, these defendants, their agent servants and/or employees were under a state-imposed obligation to use reasonable care for the protection of the infant plaintiff.

49.        At the time and place aforesaid, these defendants, their agents, servants and/or employees were under a state-imposed obligation to use reasonable care to prevent harm and other abuses of the infant plaintiff.

50.        At the time and place aforesaid, these defendants, their agents, servants and/or employees were under a state-imposed obligation to use reasonable care in the selection of foster care agencies.

51.        At the time and place aforesaid, these defendants, their agents, servants and/or employees were under a state-imposed obligation to

11

use reasonable care in the supervision of foster care agencies.

52.        At the time and place aforesaid, these defendants, their agents, servants and/or employees were under a state-imposed obligation to use reasonable care in the selection of foster homes.

53.        At the time and place aforesaid, these defendants, their agents, servants and/or employees were under a state-imposed obligation to use reasonable care in the supervision of foster homes.

54.        At the times and places aforesaid, these defendants owed a state imposed duty to prevent the unnecessary separation of Patrick from his mother

55.        At the times and places aforesaid, these defendants owed a state-imposed duty to provide the appropriate care and treatment for the infant plaintiff.

56.        At the times and places aforesaid, the defendants owed a state-imposed duty to make reasonable efforts to provide the child with a single home environment containing structure, consistency and predictability.

57.        At the times and places aforesaid, the defendants owed a state imposed duty to make reasonable efforts to provide the child with the same educational opportunities the child received before he was placed in foster care and to receive a primary education with structure, consistency and predictability.

58.        At all times mentioned herein, there were state imposed rules and regulations in place for these defendants to provide infant plaintiff

12

with appropriate care, placement and supervision while he was in the custody of these defendants and during his placement with defendant Moran.

59.     At the time and place aforesaid, the rules and regulations mentioned herein provided that infants under defendants' custody and control should not be neglected or left alone.

60.     At the time and place aforesaid, these defendants had a state-imposed duty to investigate complaints concerning neglect of the infant plaintiff.

61.     At the time and place aforesaid, these defendants had a state-imposed duty to instruct the foster parent as to the care, treatment and supervision of the infant plaintiff.

62.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. to take appropriate action concerning abuse and/or neglect of the infant child.

63.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. to investigate reports concerning abuse and/or neglect of the infant child.

64.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. following complaints, to remove him from his foster parent should there be signs or notice that the infant was at serious risk of abuse and/or neglect by the foster parent.

65.     At all times mentioned herein, these defendants owed a state-

13

imposed duty to the infant Patrick Alford, Jr. following complaints and or signs of abuse or neglect, to institute appropriate Court proceedings to prevent the abuse and/or neglect of the infant child when such situation exists.

66.     At all times mention herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. following complaints and or signs of abuse or neglect, to take reasonable measures to investigate as to whether or not there was a basis for complaints of abuse and/or neglect of the infant plaintiff.

67.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. following complaints or signs of abuse or neglect, to ascertain whether or not the foster parent(s) were mentally and/or otherwise fit to care and provide for the child.

68.     At all times mentioned herein, these defendants owed a state imposed duty to the infant Patrick Alford, Jr. following complaints or signs of abuse and or neglect, to perform an investigation which was reasonably likely to yield the information.

69.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. following complaints or signs of abuse and or neglect, to perform an investigation which was reasonably designed to yield information with reasonable speed and expeditiousness.

70.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. to take remedial action when indicated, following reports or signs of abuse and/or neglect by

the foster parent(s).

71.         At all times mentioned herein, these defendants owed a state-imposed duty to the infant(s) following complaints or signs of abuse and or neglect, to institute appropriate Family Court and/or other proceedings for the protection of the infant plaintiff.

72.         At all times mentioned herein, these defendants owed a state-imposed duty to the infants, following complaints or signs of abuse or neglect, to institute Family Court and/or other proceedings for the protection of the infant plaintiff with reasonable expeditiousness.

73.         At all times mentioned herein, these defendants owed a state-imposed duty to the infant Patrick Alford, Jr. to take remedial action which would be in the best interest of the infant plaintiff.

74.         At all times mentioned herein, these defendants owed a state-imposed duty to the infant plaintiff to comply with those rules and regulations governing the performance of their duties which were designed for protection of infants situated in a same or similar position as the infant plaintiff.

75.         At all times mentioned herein, the defendants owed a state-imposed duty to the infant plaintiff to, once they undertook a duty to protect the infant plaintiff, not to do so negligently, recklessly, carelessly or intentionally to cause harm to infant plaintiff.

76.         At all times mentioned herein, these defendants owed a state-imposed duty to the infant plaintiff to, once they undertook a duty to protect the infant plaintiff, not to do so belatedly.

77.     At all times mentioned herein, these defendants owed a state-imposed duty to the infant plaintiff to comply with those rules and regulations governing the performance of their duties which were designed for protection of the infant situated in a same or similar position as the infant plaintiff herein.

78.     These defendants with deliberate indifference violated the duties contained in paragraphs 48 to 77 of the within complaint with respect to the infant Patrick Alford, Jr.

79.     These defendants received numerous complaints concerning the infant plaintiff Patrick Alford, Jr. on a regular and continuing basis from at least January 6, 2010 until January 22, 2010. Said complaints consisted of information that said infant was in extreme distress and required care greater than he was receiving from the defendants mentioned herein.

80.     Defendant's St. Vincent's Services and Anderson personally observed behavior from the said infant, which further placed them on notice that the said infant was trying to run away from the foster home.

81.     The aforesaid reports and/or complaints consisted of, among other things, reports and/or neglect allegations concerning the infant plaintiff, Patrick Alford, Jr.

82.     These defendants failed to take appropriate action with respect to the aforesaid reports and observations.

83.     These defendants were deliberately indifferent to the complaints received and the signs of abuse and neglect in reference to the

16

placement, care, safety and supervision of infant plaintiff in his placement in foster care.

84.     These defendants failed to affirmatively protect the infant Patrick Alford, Jr.

85.     On or about January 7, 2010 plaintiff Jennifer Rodriguez had a supervised visit with the children, which was supervised by defendants St. Vincent's Services, Anderson and Villalta.

86.     Defendant Librada Moran was present at the supervised visit.

87.     At the supervised visit plaintiff Jennifer Rodriguez observed infant Jailene Alford to be messy, unkempt and to have scratches on her face.

88.     At the supervised visit, plaintiff Jennifer Rodriguez observed infant Patrick Alford, Jr. to be messy, unkempt and in an extreme state of distress, in that the boy was trying to run away from the visit, was trying to break a glass window to jump put of, was crying, and was begging to come home and was acting in a manner that he normally never acted in.

89.     At the visit, plaintiff Jennifer Rodriguez asked defendant Anderson why the boy was so upset and Anderson stated she did not know.

90.     Following the visit, Blanca Toledo made numerous complaints to defendant Anderson and St. Vincent's Services concerning the care and treatment Patrick Alford, Jr. was receiving in his foster care placement.

91.                  After December 29, 2009 and before January 22, 2010, Blanca Toledo made numerous complaints to defendant Rosado and City of New York concerning the care and treatment Patrick Alford, Jr. was receiving in his foster care placement. These complaints were made by telephone calls and text messages sent to Rosado.

92.                  Upon receipt of the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to expeditiously perform an investigation of the incident contained in the report.

93.                  Upon receipt of the aforesaid complaints these defendants owed a state-imposed duty to the infant plaintiff to expeditiously determine whether or not the reports did contain a factual basis.

94.                  Upon receipt of the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to institute appropriate Court proceedings within a reasonable time and a reasonable manner for the protection of the infant.

95.                  At the time of receiving the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to give the report sufficient priority so that the defendants would reasonably attempt to prevent further abuse and or neglect.

96.                  At the time of receiving the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to investigate the reports with sufficient speed so that reasonable efforts would be made to prevent further abuse or neglect of the infant plaintiff.

97.                  At the time of receiving the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to comply with their

18

own rules and regulations with respect to assigning priorities to the report.

98.    At the time of receiving the aforesaid complaints, these defendants owed a state-imposed duty to the infant plaintiff to act with reasonable care and to assign reasonable priorities to the report.

99.    These defendants failed to take appropriate action after receiving said complaints.

100.    These defendants failed to take appropriate action to protect Patrick Alford, Jr. from further abuse and or neglect.

101.    By failing to take appropriate action, the defendants failed to perform their state-imposed duty with respect to the infant plaintiff to give the complaints and observations sufficient priority so that defendants would reasonably attempt to prevent further abuse and or neglect.

102.    By failing to take appropriate action, these defendants failed to perform their state-imposed duty with respect to the infant plaintiff to assign the complaints and observations sufficient priority so that reasonable efforts would be made to prevent further abuse and or neglect of the infant plaintiff.

103.    By failing to take appropriate action, these defendants failed to perform their state-imposed duty with respect to the infant plaintiff to comply with their own rules and regulations with respect to assigning priorities to the complaints and observations.

104.    By failing to take appropriate action, the defendants failed to

perform their state-imposed duty with respect to the infant plaintiff to act with reasonable care and to assign reasonable priorities to the complaints and observations.

105.    By choosing to ignore the complaints given and the obvious signs of abuse and neglect, these defendants were deliberately indifferent to the placement, care, safety and supervision of infant plaintiff in his placement in foster care.

106.    On or about January 22, 2010, Patrick Alford, Jr. was in the care of defendants. Patrick Alford, Jr. has not been seen since that date and his whereabouts remain unknown.

107.    On or about the 22nd day of January 2010, at approximately 9:00 pm, left alone and unsupervised in either the public hallway of the foster mothers home or inside the foster mothers home, at 130 Vandalia Avenue, 11B, Brooklyn, New York, the infant plaintiff, Patrick Alford, Jr. disappeared and has not been seen since that time.

108.    The infant Patrick Alford, Jr. has not been seen since he was left alone unsupervised in the foster mothers building in the public hallway or inside the home.

109.    More than twelve months have elapsed since the infant minor was last seen.

110.    No fault, act or negligence on the part of the infant plaintiff caused and/or contributed to the injuries.

111.    No fault, act or negligence on the part of plaintiff Jennifer Rodriguez caused and or contributed to the injuries complained of herein.

20

112.        The infant plaintiff Patrick Alford, Jr. was *non sui juris* at the time of the occurrence and was not of an age where he was capable of committing any act of negligence.

113.        Solely as a result of the foregoing, the infant plaintiff, Patrick Alford, Jr. was damaged in the sum in excess of seventy five thousand dollars.

### FIRST FEDERAL CLAIM AS AGAINST DEFENDANTS
### ST. VINCENTS SERVICES, NATALIA ROSADO, ROBERT SALEMI, CARLENE ANDERSON and ZOILA VILLALTA

**Violation of the Rights secured by 42 U.S.C. 1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution as to Plaintiff Patrick Alford, Jr.**

114.        Plaintiff incorporates paragraphs "1" through "113" as if fully set forth herein.

115.        That infant plaintiff had at all times herein a liberty interest and privacy interest to be free from harm, abuse and neglect during his placement in foster care.

116.        That infant plaintiff had a further liberty and privacy interest to be afforded proper care, safety and supervision in his placement in foster care.

117.        That upon information and belief, acting under the color of state law, defendants City of New York, Rosado, Salemi, St. Vincent's Services, Anderson and Villalta did violate plaintiffs rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to the United State Constitution and 42 U.S.C. 1983 by ignoring the complaints given and the obvious signs of abuse and or neglect and

thereby unlawfully allowing Patrick Alford, Jr. to go missing despite having been aware and notified that he was at risk of such an event occurring.

118.        That the actions of these defendants, acting under the color of state law, occurred in and during the course and scope of their duties and functions as and while acting as agents and employees of City of New York and St. Vincent's Services resulting in the aforementioned harm to Plaintiff.

119.        That the actions and in-actions of these defendants evinced their deliberate indifference to the placement, care and safety of infant plaintiff in his placement in foster care.

120.        That the actions of these defendants were a proximate cause of the infant plaintiff's damages alleged herein, with no contribution on the part of the infant plaintiff.

**SECOND FEDERAL CLAIM AS AGAINST DEFENDANTS, NATALIA ROSADO, ROBERT SALEMI, ST. VINCENTS SERVICE, CARLENE ANDERSON and ZOILA VILLALTA**

**Violation of Rights Secured by Section 42 U.S.C. 1983, and the Fifth and Fourteenth Amendment to the United States Constitution as to Jennifer Rodriguez**

121.        Plaintiff incorporates paragraphs "1" through "120" as if fully set forth herein.

122.        At all times herein, plaintiff Jennifer Rodriguez had a liberty and privacy interest in the parenting relationship between herself and her biological son Patrick Alford, Jr.

123.        That at all times herein, prior to his placement in foster care, Jennifer

Rodriguez had been the primary caregiver for Patrick Alford, Jr. and shared a close and loving relationship with her son.

124.     That at all times herein, plaintiff Jennifer Rodriguez had "parental rights" to her son as those rights are defined by state and federal law.

125.     That the actions and in-actions of the defendants herein evinced their deliberate indifference to the parental rights and parental relationship Jennifer Rodriguez had with her son.

126.     That as a result of the actions of the defendants herein, all of whom acted under color of state law, Jennifer Rodriguez' relationship with her son has been terminated without due process of law and in violation of her rights protected by the Fifth and Fourteenth Amendments to the United States Constitution.

**FIRST STATE LAW CLAIM AS AGAINST THE CITY OF NEW YORK, NATALIA ROSADO, ROBERT SALEMI, ST. VINCENTS SERVICES, CARLENE ANDERSON and ZOILA VILLALTA**
**On behalf of Patrick Alford, Jr.**
**(Negligence)**

127.     Plaintiff incorporates paragraphs "1" through "126" as if more fully stated herein.

128.     That these defendants were aware or should have been aware of the complaints given and the signs of abuse and or neglect in reference to the care and treatment infant plaintiff was receiving in foster care.

129.     That these defendants were obligated to use reasonable care in the placement, and supervision of infant plaintiff in his placement in foster care.

130.     That these defendants failed to use reasonable care in the placement and supervision of infant plaintiff in his placement in foster care.

131.     For the foregoing reasons, these defendants were negligent in the placement, monitoring and supervision of infant plaintiff in his placement in foster care.

132.     That the actions of these defendants were a proximate cause of the injuries alleged herein to plaintiff Patrick Alford, Jr. with no contribution on the part of plaintiff herein.

## SECOND STATE LAW CLAIM AS AGAINST THE CITY OF NEW YORK, NATALIA ROSADO, ROBERT SALEMI, ST. VINCENTS SERVICES, CARLENE ANDERSON and ZOILA VILLALTA
### On behalf of Patrick Alford, Jr.
### (Violation of State and City Rules and Regulations)

133.     Plaintiff incorporates paragraphs "1" through "132" as if more fully stated herein.

134.     That these defendants were obligated to follow state and City rules and regulations for the placement, care, supervision and safety of children in foster care, as those rules applied to infant plaintiff.

135.     That these defendants violated state and City rules and regulations for the placement, care, supervision and safety of children in foster care, as those rules applied to infant plaintiff.

136.     That the actions of these defendants in violating the state and City rules and regulations were a proximate cause of the injuries alleged herein to plaintiff Patrick Alford, Jr. with no contribution on the part of plaintiff herein.

24

### THIRD STATE LAW CLAIM
### On Behalf of Patrick Alford, Jr. Against LIBRADA MORAN

137. Plaintiff incorporates paragraphs "1" through "137" as if fully set forth herein.

138. That defendant Librada Moran, by allowing infant plaintiff to remain unsupervised in the hallways of her building at a late hour did recklessly cause the disappearance of Patrick Alford, Jr.

139. That the actions of Librada Moran were a proximate cause of the injuries alleged herein to plaintiff Patrick Alford, Jr. with no contribution on the part of plaintiff herein.

### FOURTH STATE LAW CLAIM
### On behalf of Patrick Alford, Jr.
### Against Librada Moran

140. Plaintiff incorporates paragraphs "1" through "140" as if fully set forth herein.

141. That defendant Librada Moran, by the actions alleged herein did intentionally cause the disappearance of Patrick Alford, Jr.

142. That the actions of Librada Moran were a proximate cause of the injuries alleged herein to plaintiff Patrick Alford, Jr. with no contribution on the part of plaintiff herein.

**WHEREFORE**, the Plaintiffs demand the following relief jointly and severally against all Defendants on the claims of action submitted herein, and

a)          Compensatory Damages for Plaintiff Jennifer Rodriguez,

b)          Compensatory Damages for Plaintiff Patrick Alford, Jr.

c)          Punitive Damages against all Defendants herein,

d)          A Court Order pursuant to 42 U.S.C. 1998 that the Plaintiffs are
            entitled to costs of the instant action and Attorneys fees.

e)          Such other and further relief this Court may deem necessary and
            appropriate, including declaratory relief.


Dated:  New York, New York
        May 13, 2011
                                    Yours etc.,

                                         /s/

                        LAW OFFICE OF ROBERT OSUNA, P.C.
                        By:  Robert Osuna, Esq.
                        Office and P.O. Address
                        Attorneys for Plaintiff
                        11 Park Place, Suite 600
                        New York, NY 10007
                        Tel. 212.233.1033
                        Fax. 646.201.4495
                        Pacers Email:
                        osunalaw@aol.com

                        LAW OFFICE OF AMBROSE WOTORSON, P.C.
                        By: Ambrose Wotorson, Esq.
                        26 Court Street, Suite 1811
                        Brooklyn, New York 11242
                        718.797.4861
                        718.797.4863 (f)
                        Loaww1650@aol.com