UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JENNIFER RODRIGUEZ, individually
and as the natural Mother and lawful
guardian of PATRICK ALFORD, JR.,
An infant minor,

CV-10-4661 (JG)(SMG)

          Plaintiff,

    -against-

CITY OF NEW YORK
NATALIA ROSADO, individually and in
Her capacity as a Child Protective
Specialist for Administration for
Children's Services
ROBERT SALEMI, individually and in
his capacity as a Supervisor of
Child Protective Specialists for
Administration for Children's Services
ST. VINCENT'S SERVICES INCORPORATED,
*et al.*

          Defendants.
------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION ON
BEHALF OF DEFENDANTS ST. VINCENT'S, CARLENE ANDERSON,
AND ZOILA VILLALTA PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(6) FOR JUDGMENT ON THE PLEADINGS**

**JONES HIRSCH CONNORS & BULL P.C.**
Attorneys for Defendants
**ST. VINCENT'S SERVICES, INC. s/h/a
ST. VINCENT'S SERVICES,
INCORPORATED, CARLENE ANDERSON, and
ZOILA VILLALTA**
One Battery Park Plaza
New York, New York 10004
(212) 527-1000

Of Counsel:
   Charles E. O'Bryan, Esq.

TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT   . . . . . . . . . . . . . . . . 1

II.  THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT . . . . . . . 3

III. ARGUMENTS   . . . . . . . . . . . . . . . . . . . . . . 5

     POINT I -
          THE STANDARD GOVERNING
          A RULE 12(B)(6) MOTION   . . . . . . . . . . . . . 7

     A.   The Standard For A §1983 Claim   . . . . . . . . . 9

          1.   Proximate Causation   . . . . . . . . . . . 13

          2.   Deliberate Indifference   . . . . . . . . . 14

     B.   Application Of The
          Governing Standards
          To Plaintiff's Claims . . . . . . . . . . . . . . 14

          1.   The Federal Causes Of Action . . . . . . . . 14

     POINT II -
          THE ROOKER-FELDMAN DOCTRINE AND
          ITS PROGENY, BAR THE STATE COURT
          PROCEEDINGS FROM BEING REVIEWED
          IN THE INSTANT COURT   . . . . . . . . . . . . . 19

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>PAGE</u>

Albert v. Carovano, 824 F.2d 1333,
1338 (2d Cir. 1987) ...............................    13

Albright v. Oliver, 510 U.S. 266, 271 (1994) .......    9

Am. Mfrs. Mut. Ias. Co. v. Sullivan, 526 U.S.
40, 50 (1999) .....................................    11

Amnesty Am. v. Town of Hartford, 361 F.3d 113
(2d Cir. 2004) ....................................    15

Armstrong v. Manzo, 380 U.S. 545, 552 (1965) .......    8

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) .....    7

Baez v. Jet Blue Airways Corp., 2009 U.S. Dist.
LEXIS 67020 (E.D.N.Y., August 3, 2009),
at pp. 14-15 ......................................    16,17

Baker v. McCollan, 443 U.S. 137, 144 N.3 [1979] ....    9

Bell Atlantic Corp. v. Twombley,
550 U.S. 544, 570 [2007] ..........................    7,8

Blum v. Weretsky, 457 U.S. 991, 1004,
102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) .............    13

Board of the County Commissioners of
Bryant Co. v. Brown, 520 U.S. 397, 410 (1997) ......    14,18

Board of Regents of State Colleges v. Roth,
408 U.S. 564, 33 L.Ed.2d 548,
92 S.Ct. 2701 (1972) ..............................    8

Buonanotte v. New York State Office of Alcoholism
and Substance Abuse Services, 2010 U.S.App.LEXIS
19678 (2d Cir., September 22, 2010), at p.*2 .......    13

Burton v. Wilmington Parking Authority,
365 U.S. 715 (1961) ...............................    12

Ciambriello v. County of Nassau, 292 F.3d 307,
323-34 (2d Cir. 2002) .............................    11,13

City of Canton v. Harris, 489 U.S. 378............. 15,17

County of Sacramento, 523 U.S. at 849............. 16

DeShaney v. Winobago County Department of
Social Services, 489 U.S. 189, 197 (1989)......... 9

Doe v. New York City Department of Social
Services, 649 F.2d 154, 141 (2d Cir. 1981)........ 9,10

Dwares v. City of New York, 985 F.2d 94,
96 [2d Cir. 1993].................................. 9

Exxon Mobile Corp. v. Saudi Basic Industries
Corp., 544 U.S. 280, 291, 125 S.Ct. 1517,
1526, 161 L.Ed. 454 (2005)........................ 19

Hadges v. Yonkers Racing Corp., 918 F.2d 1079,
1083 M.3 (2d Cir. 1990), cert denied, 499 U.S.
960 (1991)........................................ 12

Hamlin v. City of Peekskill Board of Education,
377 F.Supp.2d 379 (S.D.N.Y. 2005)................. 13

Hoblock v. Albany Co. Board of Elections,
422 F.3d 77 (2d Cir. 2005)........................ 20,21

Jackson v. Metro & Edison Co., 419 U.S. 345,
353 (1974)........................................ 12

Lugar v. Edmonson Oil Co., 457 U.S. 922,
937 (1982)........................................ 10-11

Morrissey v. City of New York, 963 F.Supp. 270
(1997 S.D.N.Y.)................................... 18

Phillips v. City of New York, 453 F.Supp.2d 690,
736 S.D.N.Y. 2006................................. 9

Poe v. Leonard, 282 F.3d 123, 145 (2d Cir. 2002)... 14,
                                                   15-16

Randell-Baker v. Kohn, 457 U.S. 830 (1983)........ 12,13

Reaves v. Department of Veterans Affairs,
No. 08-CV-1624 (RJD), 2009 WL 35074 at 3
(E.D.N.Y., January 6, 2009)....................... 11

Rutola v. City of New York,
514 F.3d 184, 188 [2d Cir. 2008] ...................   7

Sayers v. City of New York, 2007 U.S. Dist.
LEXIS 24286 (E.D.N.Y., 2007) ......................   18

Schlein v. Miford Hosp. Inc., 561 F.2d 427,
428 (2d Cir. 1977) ................................   11

Snall v. City of New York, 1998 U.S. Dist.
LEXIS 21654 (E.D.N.Y. 1998) .......................   19

Stanley v. Illinois, 405 U.S. 645, 651-52,
31 L.Ed.2d 551, 92 S.Ct.1208 (1972) ...............   8

Sybalsky, 546 F.3d at 258 .........................   11

Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) ...   10

Tancredi v. Metro Life Ins. Co., 316 F.3d 308
(2d Cir. 2003) ....................................   11

Taylor v. Evans, 72 F.Supp.2d 278, 305 n.3)
(S.D.N.Y., 1999) ..................................   15

Trakansook v. Astoria Federal S&L Ass'n,
2007 U.S. Dist. LEXIS 28679 .......................   19

Tylena M. v. Healthshare Children's Serv.,
390 F.Supp.2d 296 .................................   15

Wyatt v. Cole, 504 U.S. 158, 161 (1992) ...........   11

Zinnamon v. N.Y. State Dept. of Educ.,
2009 U.S. Dist. Lexis, 9318 at 4
(E.D.N.Y., Feb. 6, 2009) ..........................   6

STATUTES

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of defendants
ST. VINCENT'S SERVICES, INC. s/h/a ST. VINCENT'S SERVICES,
INCORPORATED (hereinafter referred to as "ST. VINCENT'S"),
CARLENE ANDERSON, and ZOILA VILLALTA in support of their motion,
pursuant to Federal Rule of Civil Procedure 12(b)(6), for
judgment on the pleadings dismissing the claims against them for
failure to state a claim upon which relief can be granted by this
Court.

Plaintiff JENNIFER RODRIGUEZ filed the Complaint dated
May 13, 2011 against ST. VINCENT'S, as well as CARLENE ANDERSON,
ZOILA VILLALTA, THE CITY OF NEW YORK, NATALIA ROSADO, ROBERT
SALEMI, and LIBRADA MORAN.  (Exhibit "A")  The Complaint asserts
two specific Federal causes of action - both based upon 42 U.S.C.
1983 and the Fourth and Fourteenth Amendments to the United
States Constitution - and for "State law" causes of action.

A brief recounting of the procedural history is necessary.
There have been a number of successive and overlapping procedural
developments in this action since the initial Complaint was filed
on behalf of Ms. Rodriguez to initiate her action on October 11,
2010.  (See Exhibit "A").  An Answer was served to the initial
Complaint on behalf of the ST. VINCENT's defendants (see Exhibit
"B").  By Order dated November 28, 2010 leave was granted at the
pre-motion conference of November 29, 2010 for service of
dispositive motions and a Briefing Schedule was issued.  (See

Exhibit "E"). Several subsequent Scheduling Orders were issued

modifying the original Briefing Schedule culminating in the Order

of December 9, 2010. (See Exhibit "F").

Motions were served and argued before this Court on

March 21, 2011, resulting in Orders dismissing the Complaint.

(See Exhibit "G"). Additionally, the plaintiffs were granted

leave to file an Amended Complaint by April 25, 2011.

On April 25, 2011 an Amended Complaint was filed by the

plaintiffs. (See Exhibit "H"). In the interim, under index

number 11-CV-1583 the biological father of the child filed – but

did not serve – a Complaint on behalf of himself, P.A., Jr., and

his sibling J.A. At a conference conducted on April 29, 2011 the

Court granted the plaintiffs leave to file yet another Amended

Complaint. Counsel were directed to file a *single* Amended

Complaint under 10-CV-4661 by May 13, 2011. (See Exhibit "I").

On May 13, 2011 the Amended Complaint which is the subject of the

instant action was filed. (See Exhibit "J").

On May 20, 2011, leave was requested to conduct a conference

regarding the issue of pending (Exhibit "K").

On May 24, 2011 this Court issued an Order for both

plaintiffs' counsel to show cause in writing no later than

May 27, 2011 why the Court should not appoint a next friend or

Guardian ad litem to represent the interests of P.A. and dismiss

all claims brought on his behalf by any other individuals. No

2

mention was made of the infant-plaintiff J.A.  (See Exhibit "L").
By Order dated June 6, 2011 (see (See Exhibit "M") Skadden Arps
Slate Meagher & Flom LLP was appointed pro bono counsel to P.A.
Jr. and directed to file a single pleading on behalf of P.A. Jr.
under the instant case number and to encaption it "Second Amended
Complaint."  The Court further directed that upon the filing of
this Second Amended Complaint for claims raised in P.A. Jr.'s
names by the adult plaintiffs in this action and in the action
commenced under 11-CV-15 83 be dismissed for lack of standing;
no mention was made of the status of J.A.'s claims.

## II

### THE ALLEGATIONS OF THE PLAINTIFF'S COMPLAINT

This action arises out of an incident which occurred on the
night of January 22, 2010 when P.A., Jr., previously remanded to
the care of co-defendant LIBRADA MORAN, a foster mother,
disappeared while accompanying MS. MORAN down the hallway of the
apartment complex in which she resided en route to the trash
compactor room.  MS. MORAN subsequently reported that she
received a call on her cell phone while in the process of
throwing out the trash.  She stopped to converse with the person
and only at the completion of the conversation did she become
aware that P.A. Jr. was no longer with her.

3

A widespread and well-publicized search was mounted by the New York City Police Department, but to date P.A. Jr. has not been found.

In a marked departure from her original position wherein the plaintiff argued that there were no Federal claims against the ST. VINCENT'S defendants the plaintiff now posits that violations of the Fourth and Fourteenth Amendments as well as 42 U.S.C. §1983 and various State statues abound among the defendants. The Complaint further alleges that the various alleged omissions by each of the defendants amount to "deliberate indifference" and directly led to the infant's absconding from the foster home. This Memorandum of Law will only address the allegations made against the ST. VINCENT's defendants.

The plaintiff repeatedly alleges that "...these defendants had a State imposed duty to investigate complaints concerning neglect of the infant-plaintiff." (See, for example, paragraph 60, Exhibit "I").

This canard should be disposed of at the outset. The Court's attention is respectfully directed to Exhibit "Q", which is a transcript of a Family Court appearance in Richmond County Family Court on December 30, 2009 – at which the plaintiff was present. Although ST. VINCENT's had no part in instituting or continuing neglect or abuse proceedings against the adult-plaintiff it should be noted that at these proceedings on

4

December 30, 2009 the bases for the neglect proceeding were outlined. Succinctly stated it was noted on the record - without challenge by the plaintiff in this action - "...that the respondent-mother who is present in Court did neglect the subject children [P.A. Jr. and J.A.] - by using Marijuana and PCP while the children were in her care and the mother was not enrolled in a drug treatment program during the time she was using these drugs. And on at least one occasion ACS did observe the mother to be - have her speech slurred and unable to focus on the conversation being held while the children were in her care...." (sic) page 3, line 12-23 (Exhibit "Q"). The allegations of neglect and abuse directed the plaintiff were uncontested.

Although the plaintiff makes reference to violations of her Fourth and Fourteenth Amendment rights, she similarly fails to assert any factual contexts to support the Fourth Amendment claim. While it is undisputed that the seizure of these children was pursuant to a warrant issued by the Family Court (see Exhibit "P") and not sought by ST. VINCENT defendants, plaintiff nevertheless blithely asserts without specificity or support that ST. VINCENT's somehow violated *her* constitutional rights. We will address the assertions regarding the deliberate indifference allegations momentarily.

There is an allegation that all of the defendants were aware that the child made statements evidencing an intent to commit

5

suicide and all of which were ignored. Consistently it has been alleged that the child evidenced a desire to run away from the moment he came into foster care. Nevertheless this bold assertion is not substantiated anywhere in the Complaint, nor is there an assertion or explanation of how any act of St. Vincent's violated a constitutional right and dismissal is appropriate Zinnamon v. N.Y. State Dept. of Educ., 2009 U.S. Dist. Lexis, 9318 at 4 (E.D.N.Y., Feb. 6, 2009).

Although there are two Federal causes of action asserted, none of them have a factual or legal basis pleaded sufficient to render them susceptible to review by this Court.

Apart from pleading that the plaintiff "...had a liberty and privacy interest in the parenting relationship between herself and her biological son [P.A. Jr.]" – while failing to note that the issues of neglect and abuse was resolved against her1 the plaintiff, the plaintiff makes no further substantive or colorable claim against the ST. VINCENT's defendants for a sustainable allegation of Fifth and Fourteenth Amendment breaches.

---

1    See Exhibit "Q"

### ARGUMENTS

### POINT I

### THE STANDARD GOVERNING A RULE 12(b)(6) MOTION

The Court must "thus look at whether the Complaint has pled 'enough facts to state a claim to relief that is plausible on its face'" Livant, 272 Fed. Appx. at 115 (quoting Rutola v. City of New York, 514 F.3d 184, 188 [2d Cir. 2008], quoting Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 [2007]).

In Twombley, the Supreme Court explained the pleading standard as follows (550 U.S. at 555-557) (citations and internal quotation marks omitted):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formal resuscitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), the Supreme Court clarified the requirements for a plausible claim as follows:

> A claim has facial plausibility when the plaintiff pleads factual content and allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks

7

for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

The failure to allege a plausible claim for relief requires dismissal of that claim. In Trombley, 550 U.S. at 570.

We will reiterate the ST. VINCENT's defendants had nothing to do with the removal of the child. It is conceded that a parent has a constitutionally protected liberty interest in the custody of his child. See, for example, Stanley v. Illinois, 405 U.S. 645, 651-52, 31 L.Ed.2d 551, 92 S.Ct.1208 (1972). In order to state a claim for the violation of procedural due process the plaintiff must allege that the ST. VINCENT's defendants deprived her of a protected liberty interest without following constitutionally adequate procedures. See, for example, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972). "Due process requires that the State procedures provide the parent an opportunity to be heard at a "meaningful time and in a meaningful manner." See Armstrong v. Manzo, 380 U.S. 545, 552 (1965). It cannot be disputed that the plaintiff did appear and consent to the original removal and placement of the children – and did not contest the allegations of neglect and abuse. (See Exhibit "Q").

8

## A.   THE STANDARD FOR A §1983 CLAIM

"A claim under §1983 requires both '(1) that the challenge conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Phillips v. City of New York, 453 F.Supp.2d 690, 736 S.D.N.Y. 2006 (quoting Dwares v. City of New York, 985 F.2d 94, 96 [2d Cir. 1993]) "§1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 N.3 [1979]).  The Supreme Court has recognized that "[a]s a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the due process clause." DeShaney v. Winobago County Department of Social Services, 489 U.S. 189, 197 (1989) (no claim stated where a four year old boy was severely beaten by his father).

The plaintiff fails to meet the minimum requirement for establishing the minimum criteria necessary for liability under §1983 to attach.  (See, for example, Doe v. New York City Department of Social Services, 649 F.2d 154, 141 (2d Cir. 1981). The Court of Appeals in Doe held that "there are two fundamental

requisites for a §1983 liability to be imposed" (649 F.2d at 141

(citation omitted):

> The first is that the omissions must have been a
> substantial factor leading to the denial of the
> constitutionally protected liberty or property
> interests. The second is that the officials in charge
> of the agency being sued must have displayed a mental
> state of "deliberate indifference" in order to
> "meaningfully be termed culpable" under §1983. See
> also, Doe, 649 F.2d at 145 ("[d]efendants may be held
> liable under §1983 if they, or in the case of an
> agency, its top supervisory personnel, exhibited
> deliberate indifference to a known injury, a known
> risk, or a specific injury, and their failure to
> perform the duty or act to ameliorate the risk or
> injury was a proximate cause of plaintiff's deprivation
> of rights under the constitution").

In order to prevail on a civil rights action under §1983, a

plaintiff must demonstrate: (1) the deprivation of any rights,

privileges or immunities secured by the Constitution and laws;

(2) by person acting under the color of State law. 42 U.S.C.

§1983 "§1983 itself creates no substantive rights; it provides

only a procedure for redress for deprivation of rights

established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d

Cir. 1993). However, even if a plaintiff has adequately alleged

a constitutional injury – which is not conceded has been done in

this instance – a §1983 claim cannot be successful unless it can

be demonstrated that such injury was caused by a party acting

under the "color of state law," and thus the central question is

whether the alleged infringement of Federal rights is "fairly

attributable to the State." See, for example, Lugar v. Edmonson

10

Oil Co., 457 U.S. 922, 937 (1982); Wyatt v. Cole, 504 U.S. 158, 161 (1992) ("the purpose of §1983 is to deter State actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrents fails.") Tancredi v. Metro Life Ins. Co., 316 F.3d 308 (2d Cir. 2003) is particularly instructive. There the Court held "a plaintiff pressing a claim of violation of his constitutional rights §1983 is thus required to show State action."

It is equally axiomatic that private citizens and entities are not generally subject to §1983 liability. See, for example, Ciambriello v. County of Nassau, 292 F.3d 307, 323-34 (2d Cir. 2002); Reaves v. Department of Veterans Affairs, No. 08-CV-1624 (RJD), 2009 WL 35074 at 3 (E.D.N.Y., January 6, 2009) (purely private conduct is not actionable under §1983 no matter how discriminatory or wrongful.") (quoting Am. Mfrs. Mut. Ias. Co. v. Sullivan, 526 U.S. 40, 50 (1999).

It is not enough for a plaintiff to plead State involvement in "*some activity* of the institution alleged to have inflicted injury upon a plaintiff"; rather the plaintiff must allege that the State was involved 'with that activity that caused the injury' giving rise to the action. Sybalsky, 546 F.3d at 258 (citing Schlein v. Miford Hosp. Inc., 561 F.2d 427, 428 (2d Cir. 1977) (emphasis in original). A plaintiff bears the burden of

11

proof on the State action issue.  Hadges v. Yonkers Racing Corp.,
918 F.2d 1079, 1083 M.3 (2d Cir. 1990), cert denied, 499 U.S. 960
(1991).

It is respectfully submitted that the "public function"
exception to the rule that private conduct is not ordinarily
actionable under §1983 is operative.  No less than the Supreme
court has noted that "...the relevant question is not simply
whether a private group is serving a 'public function'... [T]he
question is whether the function performed has been
'traditionally the *exclusive* prerogative of the State.'"
Randell-Baker v. Kohn, 457 U.S. 830 (1983) (quoting Jackson v.
Metro & Edison Co., 419 U.S. 345, 353 (1974)) (emphasis added).
In the instant action the latest Complaint fails to advance any
concrete at all to demonstrate that the services provided by ST.
VINCENT's are the traditional *exclusive* prerogative of the State.

The United States Supreme Court addressed the "symbiotic
relationship" test in Burton v. Wilmington Parking Authority, 365
U.S. 715 (1961).  The Supreme Court applied this test in Burton
to find that a private restaurant located within a public parking
garage, which discriminated based on race, was involved in State
action because the mutual benefits were conferred, and the
restaurant operated physically and financially "as an integral
part of a public building devoted to a public parking
service...."  Id. at 724.

12

In Hamlin v. City of Peekskill Board of Education, 377

F.Supp.2d 379 (S.D.N.Y. 2005), the Court granted summary judgment

to a private company that provided bus services to schools

holding that the defendant was not a "state actor" for purposes

of 42 U.S.C. §1983 as follows:

> Claims under 42 U.S.C. §1983 lie only against state
> actors – that is, persons acting under color of state
> law – who deprive the plaintiff of a right, privilege
> or immunity secured to her by the United States
> Constitution.  Cimbriello v. County of Nassau, 292 F.3d
> 307 323 (2d Cir. 2002); Albert v. Carovano, 824 F.2d
> 1333, 1338 (2d Cir. 1987).  It is well-settled that a
> state contractor and its employees do not become state
> actors simply because they are carrying out a state
> sponsored program or are being compensated by the
> state.  Rendell-Baker v. Kohn, U.S. 830, 840-841, 102
> S.Ct. 2764, 73 L.Ed.2d 418 (1982); Blum v. Weretsky,
> 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534
> (1982).

## 1.    Proximate Causation

To state a claim for a violation of §1983, a plaintiff must

allege that "defendants' actions were the proximate cause of any

injuries suffered by them."  Buonanotte v. New York State Office

of Alcoholism and Substance Abuse Services, 2010 U.S.App.LEXIS

19678 (2d Cir., September 22, 2010), at p.*2.  "In the absence of

proximate cause . . . ., no prima facie case under 42 U.S.C.

§1983 can be made."  Buonanotte, at p.*3.

## 2.    Deliberate Indifference

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of the County Commissioners of Bryant Co. v. Brown, 520 U.S. 397, 410 (1997). "[M]ere negligence is insufficient as a matter of law to state a claim under section 1983." Poe v. Leonard, 282 F.3d 123, 145 (2d Cir. 2002). Evidence of "gross negligence" may permit an inference of "deliberate indifference" but "gross negligence" in this sense has been equated with recklessness, defined as "the kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." Poe, 282 F.3d at 140 n.14.

B.    Application Of The
      Governing Standards
      To Plaintiff's Claims

Applying the above-referenced standards to plaintiff's complaint, the allegations contained as to ST. VINCENT'S fail to state a claim upon which relief can be granted.

### 1.    The Federal Causes of Action

The plaintiff asserts a violation of her Fifth Amendment rights. (see Exhibit "H"), "First Federal Claim", page 21, and "Second Federal Claim", pg. 22). Since the Fifth Amendment applies only to the Federal government, allegations of "federal

14

action" are required to state a claim for deprivation of the Fifth Amendment. Tylena M. v. Healthshare Children's Serv., 390 F.Supp.2d 296, quoting Taylor v. Evans, 72 F.Supp.2d 278, 305 n.3) (S.D.N.Y., 1999). As no federal involvement is - or can - be alleged and further, since St. Vincent's and its employees are private citizens, the claims under the Fifth and Fourteenth Amendments must be dismissed.

The operative inquiry is whether the facts as pleaded suggest that the actions of the St. Vincent's defendants were the result of a "conscious choice" rather than mere negligence. Amnesty Am. v. Town of Hartford, 361 F.3d 113 (2d Cir. 2004)

Here the plaintiff works from a faulty premise: The fact that the child fled from the foster home establishes that there was deliberate indifference, or, conversely, inadequate supervision and training by the ST. VINCENT's defendants leading to the sued upon injury. City of Canton v. Harris, 489 U.S. 378 addressed this syllogism: "...Neither will it suffice to prove that an injury or accident could have been avoided if [a defendant] had better or more training, sufficient to equip him to avoid the particular injury-causing conduct...." Id. at 390.

With regard to whether the claims are said to arise under the Fourth or Fourteenth Amendment or the Equal Protection Clause, the touchstone is the same: is there a violation of the substantive due process rights of the plaintiff. In Poe v.

15

Leonard, 282 F.3d 123 (2d Cir. 2002) the Second Circuit held that "...(t)he core protection provided by the Due Process Clause is protection against arbitrary government action.... "Further, the inquiry must be whether the complained of conduct rises "to the conscience-shocking level...." (quoting County of Sacramento, 523 U.S. at 849.

Succinctly stated the plaintiff's First State Law Cause of Action alleges the "negligence" of ST. VINCENT'S arising from its failure to properly supervise its employees resulting in the elopement of the child. However, there is no allegation on the face of the Complaint to support a finding that ST. VINCENT'S was "deliberately indifferent" to an obvious risk of flight by the child. See, for example, Baez v. Jet Blue Airways Corp., 2009 U.S. Dist. LEXIS 67020 (E.D.N.Y., August 3, 2009), at pp. 14-15 (negligent selection claim requires "deliberate indifference" to known propensity of person selected to perform "the conduct which caused the injury"). In point of fact, alleged warnings that the child would attempt to run away from the foster home "from day one" more than any inattentiveness on the part of MS. MORAN did not proximately cause the child to flee the home. Therefore, the negligent supervision allegations do not state a claim for relief under §1983.

Moreover, the alleged failure of ST. VINCENT'S employees to properly supervise MS. MORAN also fails to state a claim upon

16

which relief can be granted. The alleged pre-elopement sentiment

expressed by the child did not present a pattern of disregard

which should have caused ST. VINCENT'S to be aware of the risk of

the type of conduct which ultimately occurred and therefore there

is no plausible basis for concluding that ST. VINCENT'S was

"deliberately indifferent" to the known risk of such an act.

Additionally, any alleged deficiencies in the supervision of the

child's placement was not a substantial factor or proximate cause

of the child's escape.

A failure to train is actionable only where the failure "in

a relevant aspect evidences a 'deliberate indifference'" to the

plaintiff's constitutional rights. See, for example, City of

Canton v. Harris, 489 U.S. 378, 389 (1989). Moreover, a

plaintiff must also "demonstrate deficiencies in the training of

employees that, if corrected, could have avoided the alleged

harm." Baez, at p. 15. The plaintiff has not alleged how any

additional or different training by ST. VINCENT'S of its

employees would have prevented the incident in question. The

plaintiff has also failed to allege that ST. VINCENT'S knew or

should have known that its alleged inadequate training would

expose the child to a risk such as alleged and that ST. VINCENT'S

was "deliberately indifferent" to this allegedly apparent risk.

The failure to allege facts plausibly supporting the requisite

17

degree of fault and causation on its lack of training theory by
the plaintiff requires dismissal of this cause of action.

Accordingly, the First State Law Cause of Action should be
dismissed.

The Courts of this District have directly spoken to the
issue of deliberate indifference. In the matter entitled
Sayers v. City of New York, 2007 U.S. Dist. LEXIS 24286
(E.D.N.Y., 2007) repeated what is know Black Letter Law:
"'...deliberate indifference' constitutes more than merely
'simple or heightened negligence' .... [it] involves a 'conscious
disregard' on the part of the ... employees for the consequences
of their actions." (Emphasis added).

In the matter entitled Morrissey v. City of New York, 963
F.Supp. 270 (1997 S.D.N.Y.) the Court quoting Bd. of the County
Comm'rs v. Brown, 520 U.S. 397 (1997) state that even assuming a
pervasive failure on the part of a municipal defendant to provide
adequate training or lack of supervision for a cooperating
officer's shooting of another officer, absent evidence of how
lack of supervision caused the injury to the victim then even an
extraordinary amount of supervision could not have prevented the
shooting.

Even if it could be argued that there was a pervasive
failure on the part of ST. VINCENT'S to train or supervise its
employees adequately, the plaintiff failed to demonstrate how

18

this failure "caused" the sued upon incident. See, for example, Morrissey, supra. In the matter entitled Snall v. City of New York, 1998 U.S. Dist. LEXIS 21654 (E.D.N.Y. 1998) specifically concluded that the plaintiff had not established "deliberate indifference" to the constitutional rights of the deceased and show no causal link between the injury and a deficiency in the defendant's supervision program. Here there is no such pleading.

## POINT II

### THE ROOKER-FELDMAN DOCTRINE AND ITS PROGENY,
### BAR THE STATE COURT PROCEEDINGS FROM
### BEING REVIEWED IN THE INSTANT COURT

Under the Rooker-Feldman doctrine, inferior Federal Courts have no subject matter jurisdiction over suits that seek direct review of judgments of State Courts.

The Rooker-Feldman doctrine "precludes a United States District Court from exercising subject matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority [.]" Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291, 125 S.Ct. 1517, 1526, 161 L.Ed. 454 (2005). As noted in the matter entitled Trakansook v. Astoria Federal S&L Ass'n, 2007 U.S. Dist. LEXIS 28679, it is well established that the Rooker-Feldman doctrine is "...grounded in the principal that 28 U.S.C. §1257 vests jurisdiction to hear appeals from the highest court of each state

19

exclusively in the United States Supreme Court. District Courts may not, therefore, adjudicate what are in essence de facto appeals from State Court judgments...."

The Second Circuit has created a four pronged text to determine whether Rooker - Feldman preclude a Federal Court from exercising jurisdiction over a claim: (1) "the Federal Court the plaintiff must have lost in State Court"; (2) "the plaintiff must complain of injuries caused by State Court judgment"; (3) "the plaintiff must invite District Court review and rejection of that judgment"; and (4) the State Court judgment must have been rendered before the District Court proceedings". Hoblock v. Albany Co. Board of Elections, 422 F.3d 77 (2d Cir. 2005).

In the instant action the plaintiff is alleging that the determination by ACS to remove the children from her custody violated her civil rights. Additionally, she alleges that the selection of Ms. Moran by ST. VINCENT's similarly interfered with her civil rights.

As noted by the Court in Hoblock the "...key to resolving this uncertainty lies in the second substantive Rooker-Feldman requirement: that Federal plaintiffs are not subject to the Rooker-Feldman bar unless they complain of an injury caused by a State Court judgment. Indeed, this is the core requirement from which the others derive; focusing on it helps clarify when the doctrine applies...."

20

Further, as noted by Hoblock "...this requirement explains why a Federal plaintiff cannot escape the Rooker-Feldman bar simply by relying on a legal theory not raised in State Court. Suppose a State Court, based purely on State law, terminates a father's parental rights and orders the State to take custody of his son. If the father sues in Federal Court for the return of his son on the grounds that the State judgment violates his Federal substantive due process rights as a parent, he is complaining of a injury caused by the State Court judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in State Court, because only the Supreme Court may hear appeals from State Court judgments...." 422 F.3d at 88.

## CONCLUSION

For the foregoing reasons, the motion by ST. VINCENT'S

pursuant to Rule 12(c) for judgment of the pleadings should be

granted in its entirety together with such other and further

relief which this Court may deem just, proper, and equitable.

Dated: New York, New York
       September 12, 2011

Respectfully Submitted,

JONES HIRSCH CONNORS & BULL P.C.

By    _Charles E. O'Bryan_

Charles E. O'Bryan, Esq. (CEO-4505)
Attorneys for Defendants
ST. VINCENT'S SERVICES, INC. s/h/a
ST. VINCENT'S SERVICES,
INCORPORATED, CARLENE ANDERSON, and
ZOILA VILLALTA
One Battery Park Plaza
New York, New York 10004
(212) 527-1000

Of Counsel:

Charles E. O'Bryan, Esq.

**831772**

22

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK      )
                       )  ss.:
COUNTY OF NEW YORK     )

DEBORAH McINTOSH-LeCONTE, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides in KINGS County, New York.

On the 12th day of September, 2011, deponent served the within

**NOTICE OF MOTION, DECLARATION OF CHARLES E. O'BRYAN and MEMORANDUM OF LAW IN SUPPORT OF THE MOTION ON BEHALF OF DEFENDANTS ST. VINCENT'S, CARLENE ANDERSON, AND ZOILA VILLALTA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) FOR JUDGMENT ON THE PLEADINGS**

upon:

LAW OFFICE OF ROBERT OSUNA, P.C.
Attorneys for **Plaintiff Jennifer Rodriguez**
11 Park Place, Suite 600
New York, New York 10007
(212) 233-1033

LAW OFFICES OF AMBROSE W. WOTORSON, JR.
Attorneys for **Plaintiff Jennifer Rodriguez**
26 Court Street
Brooklyn, New York 11242-1118
(718) 797-4861

LAW FIRM OF JAMES R. LAMBERT, ESQ.
Attorney for **Plaintiff Patrick Alford, Sr. and "J.A."**
1491 Richmond Road
Staten Island, New York 10304
(718) 667-5000

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Attorneys for **Plaintiff, P.A., JR.**
Four Times Square
New York, New York 10036
(212) 735-3000
Attn: **Jonathan J. Lerner, Esq.**

BARRY McTIERNAN & MOORE
Attorneys for Defendants CITY OF NEW YORK,
OMAR LOFTON, ROBERT SALEMI, NATALIA ROSADO,
ZANETTE SARGEANT, SHARICE SCOTT, EMMANUEL
OKON, and JAKE NIXON, JR.
2 Rector Street
New York, New York  10006
(212) 313-3606
Attn:  Suzanne M. Halbardier, Esq.

KRAL CLERKIN REDMOND RYAN PERRY & VAN ETTER
Attorneys for Defendants KATHLEEN BENITEZ and MARIA PENA
538 Broadhollow Road, Suite 200
Melville, New York 11747
(631) 414-7930
Attn: Thaddeus J. Rozanski

VIA CERTIFIED and REGULAR MAIL
Ms. Librada Moran
130 Vandalia Avenue, #11B
Brooklyn, New York  11239

at the addresse(s) designated by said attorney(s) for that
purpose by depositing a true copy of same enclosed in a postpaid
properly addressed envelope in an official depository under the
exclusive care and custody of the United States Postal Service
within the State of New York.

DEBORAH McINTOSH-LeCONTE

Sworn to before me this
12TH day of September 2011.

Notary Public

LYNEL J. TAYLOR DUNKINS
Notary Public, State of New York
No. 01TA6191081
Qualified in New York County
Commission Expires Aug. 4, 2012

E3866-807031.1