UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| P.A., JR., an infant minor, : | |
| : | |
| Plaintiff, : | 10-CV-04661(JG)(SMG) |
| : | |
| - against - : | |
| : | |
| CITY OF NEW YORK; JOHN MATTINGLY, : | |
| individually and in his capacity as Commissioner of the : | |
| Administration for Children's Services; DEBORAH : | |
| PRIDE, individually and in her capacity as a Child : | |
| Protective Specialist for the Administration for Children's : | |
| Services; NATALIA ROSADO, : | |
| individually and in her capacity as a Child Protective : | |
| Specialist for the Administration for Children's Services; : | |
| ROSA SOSA, individually and in her capacity as a Child : | |
| Protective Specialist for the Administration for Children's : | |
| Services; ROBERT SALEMI, individually and in his : | |
| Capacity as a Supervisor of Child Protective Specialists for : | |
| the Administration for Children's Services; ZANETTE : | |
| SARGEANT, individually and in her capacity as a Child : | |
| Evaluation Specialist for the Administration for Children's : | |
| Services; ST. VINCENT'S SERVICES, INC.; CARLINE : | |
| ANDERSON, individually and in her capacity as a : | |
| caseworker for St. Vincent's Services, Inc.; and ZOILA : | |
| VILLALTA, individually and in her capacity as a : | |
| supervisor of caseworkers for St. Vincent's Services, Inc., : | |
| : | |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF P.A. JR.'S
MOTION FOR EXPEDITED DISCOVERY OF THE INVESTIGATIVE FILE**

        SKADDEN, ARPS, SLATE,
         MEAGHER & FLOM LLP

        Jonathan J. Lerner
        Robert A. Fumerton
        Patrick G. Rideout
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        *Attorneys for Plaintiff P.A., JR.*

## **TABLE OF CONTENTS**

ARGUMENT..........................................................................................................................1

      A.      As a Threshold Matter, the City Has Not Met
             Its Burden to Invoke the Law Enforcement Privilege............................................1

      B.      Even If the City Met Its Burden to Invoke the Law Enforcement
             Privilege, P.A. Has Satisfied His Burden Mandating Production of the File..........3

      C.      The Need for Expedited Discovery Could Not Be Greater....................................7

CONCLUSION.....................................................................................................................8

Plaintiff P.A., Jr. ("P.A.") respectfully submits this Reply Memorandum of Law in Further Support of His Motion for Expedited Discovery of the Investigative File[1] (the "Motion").[2]

## ARGUMENT

**A.    As a Threshold Matter, the City Has Not Met Its Burden to Invoke the Law Enforcement Privilege**

In response to P.A.'s Motion, the City submits only a letter, dated September 15, 2011, unaccompanied by any declarations or evidentiary showing whatsoever (the "Opposition"). Unsupported by a scintilla of factual evidence, the City's sole claim in its Opposition is that the Investigative File is protected from disclosure by the law enforcement privilege.[3]

It is axiomatic that the party asserting the law enforcement privilege bears the burden of justifying its application "'in a deliberate, considered, and reasonably specific manner.'" Floyd v. City of New York, 739 F. Supp. 2d 376, 380 (S.D.N.Y. 2010) (citations omitted). At a minimum, to satisfy this burden, the City "must specify 'which documents or class of documents are privileged and for what reasons.'" King v. Conde, 121 F.R.D. 180, 189

---

[1] Unless otherwise noted, all defined terms have the meaning ascribed to them in our August 31, 2011 letter (the "8/31/2011 Letter").

[2] In response to our 8/31/2011 Letter seeking a pre-motion conference for the Motion, this Court issued an Order on September 1, 2011, effectively deeming the Letter to be the Motion by providing that any opposition to the Motion be filed by September 12, 2011, any reply be filed by September 16, 2011, and the initial conference be held on September 27, 2011, at which time the Motion would be addressed. After the close of business on the date its Opposition was due, the City belatedly requested an extension to oppose the Motion by September 19 or, in the alternative, to defer the Motion until after the pending motions to dismiss are adjudicated. On September 15, 2011, after a telephonic conference, the Court ordered the Motion be returnable on September 27, 2011, as originally scheduled.

[3] This privilege applies only where "the documents in question contain (1) information pertaining to law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources, (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations." In re The City of New York, 607 F.3d 923, 948 (2d Cir. 2010) (citations omitted).

1

(E.D.N.Y. 1988) (Weinstein, J.) (citation omitted). As this Court stated in King,

> This threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information. "Unless the government, through competent declarations, shows the court what interests [of law enforcement or privacy] would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis." If the police make no such showing, the court has "no choice but to order disclosure."

Id. (emphasis added) (citations omitted).

In this case, there is no doubt that the City is well aware of its initial heavy burden. Indeed, at the August 2, 2011 Conference, this Court unequivocally warned the City of the evidentiary burden it faced under King and its progeny:

> I know therefore that [the City] ha[s] had occasion to litigate over [King] and its progeny so frequently know that some kind of an evidentiary record built from people with knowledge of the details of the case needs to be before the Court and the Court could not protect material based on law enforcement privilege based upon the kinds of general exchange we've had today. So I'm sure that when the time comes that there's a motion to compel or a motion for a protective order we'll have the benefit of that evidentiary foundation.

(8/2/2011 Tr. 31:25-32:9 (emphasis added).)

In derogation of King and this Court's admonition, the City fails even to attempt to satisfy its burden and afford the Court "the benefit of [an] evidentiary foundation." Rather, the City offers the same bare legal conclusions merely parroting the required elements to invoke the privilege, which this Court already correctly stated "could not protect material based on law enforcement privilege." (See, e.g., Opp. at 2 ("disclosure of the file could reveal investigatory tools and techniques, compromise methods and procedures").) Standing alone, the City's failure to submit any evidence supporting application of the law enforcement privilege is fatal to its effort to prevent disclosure of the Investigative File.

It also bears emphasis that the City has conspicuously failed to mention in its

2

Opposition, much less attempt to support with competent evidence, the two primary assertions previously advanced in its initial opposition to P.A.'s request for the Investigative File before the SAC was filed, namely that (1) "the investigation into P.A. Jr.'s disappearance is an ongoing, high-priority investigation" that disclosure of the File could "jeopardize" and (2) the "intrusion of a private investigator could be a detriment to the well being of a child who may have been kidnapped and whose life may be in danger." (7/7/2011 Letter at 2.) Instead, the City merely offers vague speculation that disclosure of the Investigative File may endanger confidential sources and have a chilling effect on witnesses' willingness to cooperate with future investigations into missing children. (Opp. at 2.) These *ipse dixit* arguments woefully fail to satisfy the City's burden. Accordingly, the Investigative File should be produced.[4]

**B.      Even If the City Met Its Burden to Invoke the Law Enforcement Privilege, P.A. Has Satisfied His Burden Mandating Production of the File**

Even if the City had not failed to establish that the law enforcement privilege applies (which it did), the City concedes, as it must, that the Investigative File still must be produced if P.A. shows "'(1) that the suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and (3) that the party has a compelling need for the privileged information.'" (Opp. at 3 (citation omitted).) Here, the City cannot and does not even attempt to argue that the SAC is frivolous or not brought in good faith. Rather, it contends that P.A. has not satisfied the second and third prongs. (Id.) This argument should be rejected for several separate and independent reasons.

---

[4] While this Court should reject the City's invocation of the law enforcement privilege based on its failure to provide any competent evidence supporting its application, at a minimum, the Court must conduct an *in camera* review of the Investigative File on a document-by-document basis to determine whether each document contained therein falls within the privilege. See City of New York, 607 F.3d at 948 ("To assess both the applicability of the privilege and the need for the documents, the district court must ordinarily review the documents in question."); accord Floyd, 739 F. Supp. 2d at 379.

3

First, in attempting to keep the entire Investigative File confidential – including the identity of potential relevant witnesses – the City has admitted these materials are not available from any other source.  Indeed, the City does not dispute that much of the Investigative File consists of information obtained over a year and a half ago at the time of P.A.'s disappearance when evidence was fresh and memories had not yet faded.  It is impossible now to recreate this information 20 months later.  The City's contention that "Skadden has access to other sources of information regarding the circumstances of their client's going missing from his foster care placement" (id.) misses the point.  As a legal matter, the only relevant issue is whether the information in the Investigative File is available from other sources – not whether there may be some other information relevant to P.A.'s disappearance available from other sources.

Second, the City speciously claims "Skadden cannot demonstrate a compelling need for the Investigative File," because its contents purportedly are "not necessary for the prosecution of P.A.'s claims."  (Id.)  This contention is demonstrably false.  As we established in our August 31 letter, and as the City fails to address, much less deny, P.A. is the principal witness in this case and his testimony is important to shed light on numerous issues central to the prosecution of his case, including but not limited to, (1) P.A.'s own first-hand testimony of the facts alleged about him in the SAC, (2) the circumstances surrounding his disappearance, (3) his condition while in the City's protective custody, and (4) his treatment while in such custody by individuals acting under color of state law.  (8/31/2011 Letter at 1-2.)  Because disclosure of the Investigative File is necessary to have any chance of locating P.A., and P.A. is the central witness in this case, we plainly have a compelling need for this information.

Floyd v. City of New York, 739 F. Supp. 2d 376 (S.D.N.Y. 2010), is squarely on

4

point. There, plaintiffs sought investigative files of the NYPD's Internal Affairs Bureau relating to the NYPD's alleged "stop, question and frisk" practices to satisfy mandatory quotas. The court rejected application of the law enforcement privilege, holding, in language squarely applicable here, that unlike in City of New York, the documents were not highly sensitive as they "[did] not involve secret operations or undercover officers"; did not "implicate such vital concerns as terrorism, mass unrest or riots"; and their disclosure would not "endanger any of the officers mentioned therein." Id. at 384-85 (emphasis added).

The City attempts to distinguish Floyd by contending that the lawsuit at issue there "involved a matter of public concern." (Opp. at 3.) We profoundly disagree with this purported distinction. This case is a matter of utmost public concern and the City's attempt to denigrate the importance of the request for information that could assist in locating P.A. is regrettable and may explain why P.A. is the only missing child under the age of 10 who has not been located since January 1, 2010. In this same vein, the City erroneously asserts that "this suit . . . is a civil action, not a civil rights action." (Id. at 4.) Even a cursory review of the SAC reveals that P.A. has asserted numerous civil rights violations committed by the City and various entities acting under color of state law against him – a seven year-old boy who was unlawfully ripped from a family member and placed into ACS custody. (See SAC ¶¶ 86-170.) As in Floyd, "[t]he public has a profoundly important interest in giving force to the federal civil rights law, and in reasonable transparency from law enforcement agencies." Floyd, 739 F. Supp. 2d at 381-82 (quotation omitted).[5]

---

[5] Moreover, the City's reliance on Borchers v. Commercial Union Assurance, 874 F. Supp. 78, 80 (S.D.N.Y. 1995), only turns to bite it. There, the court denied production of the F.D.N.Y. arson investigation file where, unlike here, (i) the proponent of the privilege provided a detailed affidavit to meet its burden; (ii) the documents pertained to potential criminal activity of the plaintiffs themselves; (iii) there was a possibility that plaintiffs would seek to use their civil action to circumvent the criminal discovery process; and (iv) the plaintiffs already had access to "many of the supposed informants." In addition, the court only denied the request after conducting an *in camera* review of the
(cont'd)

5

Finally, the City's disingenuous attempt to manufacture a basis to contend that a protective order would be insufficient to address any confidentiality concerns because "Skadden has given interviews to the media, in which P.A.'s identity in the context of this civil suit was revealed," (Opp. at 2), is frivolous and should be summarily rejected.  As the City is well-aware, Skadden has never "revealed" any non-public information to the media, and the City has not identified a shred of information that was disclosed by any Skadden lawyer.  Not surprisingly, none of the articles identified by the City contain any non-public information or any quote from a Skadden attorney disclosing such information or even referring to P.A. by name.  The media is well aware of P.A.'s identity because (1) the City failed to protect him, (2) he is the only child in New York under the age of 10 that has been missing since 2010, (3) his name and the names of his family members were publicly revealed in prior court filings, including those submitted by the City (see, e.g., Dkt. No. 40 (attaching exhibits); Dkt. No. 114 (same)), and (4) his own mother, Jennifer Rodriguez, is a named plaintiff in this action.  The City – not Skadden – is the party that has consistently revealed non-public information concerning this investigation, including, most recently, the rank speculation that the NYPD may be "hot on the trail" of a kidnapping suspect.  (7/7/2011 Letter at 2.)

       We have made clear for the last two months that we are willing to enter into a strict confidentiality agreement to protect any of the City's concerns over protecting the NYPD's sources.  The City cannot credibly claim that Skadden and its retained investigators cannot be trusted to preserve the confidentiality of the contents of the Investigative File.

---

*(cont'd from previous page)*
documents.  Id.  In contrast to Borchers,  the City has offered no evidence to support its invocation of the privilege and none of the concerns regarding plaintiffs' criminal activities or abuse of discovery in that case are present here.

6

## C. The Need for Expedited Discovery Could Not Be Greater

As we established in our August 31 Letter, the vast majority of courts have adopted a "good cause" standard to determine whether to exercise their well-established authority to order expedited discovery. (8/31/2011 Letter at 2 (citing cases).) "Good cause" may be found whenever "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." (Id. (citing Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002)).)

This case literally exudes good cause. Frankly, it is hard to understand the City's stubborn attempts to resist our efforts to locate our client. Indeed, one would have expected the City to welcome our assistance since it has been twenty months and counting since P.A. disappeared from the City's custody and the time has come for a fresh look. In its Opposition, the City misstates our showing of "good cause" and claims we seek expedited discovery merely to avoid "'duplication' of effort." (Opp. at 5; see also id. ("While we are mindful that Skadden and its investigator are undertaking their tasks pro bono, we do not believe the avoidance of 'duplication' warrants the expedited discovery of the NYPD Investigative File.").) In reality, the need for expedited discovery of the Investigative File could not be greater because disclosure of the Investigative File is necessary for us to have any chance of locating our client and, with every tick of the clock, the trail grows colder and the likelihood of finding P.A. and preserving his important testimony becomes more remote.[6]

It bears emphasis that the City concedes that it would suffer no prejudice to produce the Investigative File in an expedited fashion. Indeed, the City has never claimed that

---

[6] Although the City correctly points out that P.A. cites cases where testimony is preserved through expedited discovery under Rule 27, the fact that perpetuation of testimony is often governed by a different rule does not undermine the fact that courts routinely grant expedited discovery where, as here, it is necessary to preserve the testimony of witnesses or where it is necessary to prevent prejudice or irreparable harm. (8/31/2011 Letter at 3.)

7

the Investigative File cannot be readily produced, and it has been aware of our narrowly-tailored request for over two months. Rather, the City predicates its resistance to production on its erroneous contention that the law enforcement privilege protects the Investigative File from disclosure. (Opp. at 6.) The applicability of this privilege has no bearing whatsoever on the timing of production or the propriety of our request to expedite discovery.

## CONCLUSION

Accordingly, for all the foregoing reasons, we respectfully request that the Court order immediate production of the Investigative File.

Dated:  September 22, 2011         Respectfully submitted,
        New York, New York

                                   /s/ Jonathan J. Lerner
                                   Jonathan J. Lerner (jonathan.lerner@skadden.com)
                                   Robert A. Fumerton(robert.fumerton@skadden.com)
                                   Patrick G. Rideout (patrick.rideout@skadden.com)
                                   SKADDEN, ARPS, SLATE,
                                    MEAGHER & FLOM LLP
                                   Four Times Square
                                   New York, New York 10036
                                   (212) 735-3000

                                   *Attorneys for Plaintiff P.A., JR.*