# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2550
DIRECT FAX
(917) 777-2550
EMAIL ADDRESS
JONATHAN.LERNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 15, 2011

**BY ECF**

Honorable John Gleeson
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   *Rodriguez v. City of New York, et al.*, 10-CV-04661

Dear Judge Gleeson:

As Your Honor is aware, we are representing P.A., Jr. ("P.A.") as pro

bono counsel in the above-entitled action.  I write at the suggestion of Chief

Magistrate Judge Gold to seek clarification as to whether the Court intended our

appointment as "pro bono counsel" to confer the same responsibilities and authority

of a "guardian *ad litem*" or "next friend," or, if not, whether a "guardian *ad litem*" or

"next friend" appointment should be made

In this Court's Order, dated June 6, 2011, appointing us as pro bono

counsel (a true and correct copy of which is attached hereto as Exhibit A), Your

Honor discussed the Court's authority to appoint a guardian *ad litem* or "next friend"

Hon. John Gleeson
December 15, 2011
Page 2

for P.A. and noted that "counsel for Rodriquez suggested that in light of the

disagreement [between counsel for Alford, Sr. and Rodriguez in filing a single

complaint], it might be appropriate to appoint a guardian for P.A. I agree." (6/5/2011

Order at 5.) The Court's ultimate decision stated:

> Accordingly, I exercise my discretion under Fed. R. Civ. P. 17(c) to
> 'issue [an] appropriate order' to protect P.A., and appoint him
> independent pro bono counsel. Skadden, Arps, Slate, Meagher &
> Flom, LLP, by attorneys Jonathan J. Lerner and Robert A. Fumerton,
> shall serve as pro bono counsel to P.A.

(Id. at 6.)

Since the Order, the St. Vincent's Defendants ("SVS Defendants")

have attempted to exploit their perception that windage exists between the role of pro

bono counsel and a *guardian ad litem* to try to delay the advancement of the case.

Initially, by letter dated June 16, 2011, Mr. O'Bryan, counsel to the SVS Defendants,

wrote to Your Honor requesting appointment of a *guardian ad litem* so that the case

could be placed on the suspense calendar and delayed possibly for years: "We would

urge this court to consider . . . . the appointment of a *guardian ad litem* and

immediately upon this appointment considering placing the matter on the suspense

calendar . . . ." (6/16/2011 O'Bryan Letter at 3.)[1]

More recently, the SVS Defendants actually objected to the

Responses to Interrogatories we served on behalf of PA, Jr., because they were

---

[1] A true and correct copy of the 6/16/2011 O'Bryan Letter is attached hereto as Exhibit B.

Hon. John Gleeson
December 15, 2011
Page 3

provided by this Firm, not verified by our missing client, P.A., who disappeared in

January 2010 while in foster care arranged by the SVS Defendants.  As hard as it is

to believe, Mr. O'Bryan wrote to Chief Magistrate Gold on November 22, 2011:

> We will submit a separate formal objection to the responses to
> interrogatories offered by counsel for 'P.A.', today as ordered.
>
> Nevertheless, it should be pointed out to this Court as we are sure
> counsel is fully aware that pursuant to Rule 33(b) of the Federal Rules
> of Civil Procedure when a party is an individual, the party, not the
> attorney, must sign a verification or affidavit as to the accuracy of the
> answers.  See, for example, Abrams v. Ciba Specialty Chemicals,
> Corp., F.RD. (S.D. Ala. 2010) if the signature is not under oath, it
> does not satisfy Rule 33(b).

(11/22/2011 O'Bryan Letter at 2.)[2]  Not surprisingly, at a subsequent discovery

conference held on November 28, 2011, Judge Gold decisively rejected this

objection from the Bench:

> THE COURT: Let's talk about . . . St. Vincent's Services' objection to
> plaintiff's responses to interrogatories on the grounds that they're not
> signed by PA or a guardian or legal representative to PA.   I
> understand your contention correctly?
>
> MR. O'BRYAN:  Yes.
>
> THE COURT:  I can't help but think about the fellow who kills his
> parents and then complains about his status as an orphan, but I don't
> think that's productive to think of it that way in this context.  I don't
> intend to make any discovery rules based on the failure to have the
> party sign the documents.  There's no prejudice to the defendants from
> those responses at this stage of the case.

(11/28/2011 Tr. at 11:19-12:6.)[3]

---

[2] A true and correct copy of the 11/22/2011 O'Bryan Letter is attached hereto as Exhibit C.

Hon. John Gleeson
December 15, 2011
Page 4

          Nevertheless, at this same conference, Judge Gold requested that we raise with Your Honor the possibility of clarifying the Court's intention concerning our role:

> THE COURT: . . . Mr. O'Bryan's letter, while perhaps exceedingly technical in the context of unsigned interrogatory responses, does raise a question that may be worth confronting sooner rather than later which is as discovery begins to progress, it may well be that the defendants will make a Rule 68 offer of judgment at some juncture. It may well be that a settlement offer in another format is offered, or that other decisions that should bind the plaintiff will need to be decided upon. And I'm just wondering what you're thinking about in terms of what the most appropriate and lawful way to proceed in that respect is. Certainly, I don't say anything disparaging toward you or your firm when I ask the question, but I also don't want to see you put in an ethically awkward posture by virtue of a very substantial pro bono undertaking.

> MR. LERNER: I think, first of all, with respect to the current, the technical issue, you don't have to go beyond [Wright] or [Moore] to see that when you have an infant or incapacitated client the attorney may verify those. But Your Honor is raising a different issue. And there is a guardian ad litem appointed in the Family Court. We haven't met him yet. That's one possible avenue, and the other is Judge Gleeson who started this issue, and the court might be, you know, the proper vehicle because the cases do say that the ultimate parens patriae for an infant would be the court. And we could make a recommendation such as a class action ultimately to Rule 26. The court is the person to protect everybody.

> THE COURT: You mean Rule 23?

> MR. LERNER: Class action. Rule 23. Sorry. We're here on a discovery conference. You're right, Your Honor. But that was our thinking. But we're painfully aware that that issue exists but we don't think it's a real issue with respect to the interrogatory responses and

---

[3] A true and correct excerpted copy of the 11/28/2011 Transcript is attached hereto as Exhibit D.

Hon. John Gleeson
December 15, 2011
Page 5

had the same reaction that Your Honor did to the issue that was raised.

THE COURT: Can you suggest a time frame by which you would either ask Judge Gleeson to appoint the Family Court's guardian ad litem to represent PA in this case or make some other application or express an indication of your intentions in that regard?

MR. LERNER: We were going to grapple with that on the first that seemed to require it. We would sort of kick the can until actually down the road.

\*    \*    \*

THE COURT: . . . So I just don't want it to come up and bite us in the back when a decision needs to be made on a short notice.

MR. LERNER: We could write to Judge Gleeson and ask him what he has in mind. He originally – the order to show cause originally contemplated the appointment of a guardian ad litem, not pro bono counsel. Ultimately the judge's order appointed pro bono counsel. It wasn't clear to us what Judge Gleeson had in mind.

THE COURT: Yes.

\*    \*    \*

MR. LERNER: We'll move this to the front burner, maybe right (write) to Judge Gleeson and raise the issue and ask him to clarify how he would like to proceed.

THE COURT: Yes, and I'm sure he would welcome a suggestion from you because if he had a firm idea about it that he wanted to see implemented, I suspect we would know that by now. And he probably wants to make sure that, you know, we find someone who will work well with the efforts that you've undertaken and communicate easily with you. So I'm sure your input would be appreciated.

MR. LERNER: Thank you, Your Honor.

Hon. John Gleeson
December 15, 2011
Page 6

       THE COURT: Can I ask you then maybe by December 15th to have something to the court or even if it's a letter saying you need a little more time?

       MR. LERNER:  Sure.

       THE COURT: Okay.   Just so we know it doesn't fall through the cracks because I know it doesn't have any practical urgency now but I'd rather have it addressed while we have that luxury.

       MR. LERNER:  We will do that.

(11/28/2011 Tr. at 12:12-14:1; id. at 14:9-18; id. at 16:3-22.)

       After the conference, we further considered the issue and believe that we are totally united in interest with P.A. and can serve whatever role Your Honor wishes us to play on his behalf, including "guardian *ad litem*" or "next friend." While my Firm has represented the City of New York from time to time in matters totally unrelated to this case pursuant to conflicts waivers from the City, at present our representations of the City are only in pro bono matters and many more current pro bono matters are adverse to the City.  I can assure this Court that none of the lawyers representing P.A. represent or will represent the City in any matter during the pendency of this case, and that these unrelated matters would in no way diminish the zeal with which we will continue to pursue P.A.'s interests.

       Respectfully,


       /s/ Jonathan J. Lerner
       Jonathan J. Lerner

# Exhibit A

UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
                                                    :
JENNIFER RODRIGUEZ, individually and as the         :
natural mother and lawful guardian of P.A., JR. an  :
infant minor,                                       :
                                                    :
                   Plaintiffs,                      :
                                                    :
          -against-                                 :       ORDER
                                                    :       10-CV-04661 (JG) (SMG)
CITY OF NEW YORK; NATALIA ROSADO,                   :
individually and in her capacity as a Child Protective :
Specialist for the Administration for Children's    :
Services; ROBERT SALEMI, individually and in his    :
Capacity as a Supervisor of Child Protective Specialists :
for Administration for Children's Services; ST.     :
VINCENT'S SERVICES, INC.; ZOILA VILLALTA,           :
Individually and in her capacity as a supervisor of case :
workers for St. Vincent's Services, Inc.; LIBRADA   :
MORAN,                                              :
                                                    :
                   Defendants.                      :
                                                    :
------------------------------------------------------------------x
                                                    :
                                                    :
Patrick ALFORD; P.A. JR., a minor, by Patrick       :
Alford, his father and natural and legal guardian; J.A, :
a minor, by  Patrick Alford, her father and natural and :
legal guardian,                                     :
                                                    :
                   Plaintiffs,                      :
                                                    :       11-CV-01583 (JG) (SMG)
          -against-                                 :
                                                    :
ADMINSTRATION FOR CHILDREN'S SERVICES;              :
CITY OF NEW YORK; ST. VINCENT'S SERVICES,           :
INC.; LIBRADA MORAN,                                :
                                                    :
                   Defendants.                      :
                                                    :
------------------------------------------------------------------x

JOHN GLEESON, United States District Judge:

On January 22, 2010, P.A, Jr. ("P.A.")[1] then seven years old, disappeared from his foster care home.  On October 12, 2010, P.A.'s mother, Jennifer Rodriguez, filed a complaint on her own behalf and her son's behalf.  On March 21, 2011, the complaint was dismissed, in part with prejudice and in part without.  Rodriguez filed an amended complaint on April 25, 2011.  The amended complaint asserts claims against the City of New York, St. Vincent's Services, Inc. and two of its employees, two employees of the Administration for Children's Services, and P.A's foster mother, Librada Moran, for, *inter alia*, alleged violations of P.A.'s constitutional rights leading to his disappearance.  On March 31, 2011, P.A.'s father, Patrick Alford, filed a complaint on behalf of himself, P.A., and P.A.'s sister, J.A.  With respect to the claims asserted on P.A's behalf, Alford's complaint is nearly identical to Rodriguez's October 12, 2010 pre-amendment complaint, which had been dismissed ten days before Alford commenced his action.

In an order dated May 24, 2011, I observed that "only one party may act in a representative capacity with respect to an infant or incompetent who comes before the court." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 650 (2d Cir. 1999).  I further observed that because Rodriguez and Alford do not have physical custody of P.A., they may not be authorized to bring suit on his behalf.  *See Otero ex rel. Otero v. State*, 602 N.Y.S.2d 501, 502 (Ct. Cl. 1993).  Accordingly, I directed Rodriguez and Alford to show cause why the Court should not appoint a "next friend" or guardian ad litem to represent P.A.'s interests and dismiss all claims brought on his behalf by any other individual.

On May 27, 2011, in response to my order to show cause, Rodriguez moved for appointment as P.A.'s next friend.  Rodriguez argues that she has a significant relationship to

---

[1]     Pursuant to Fed. R. Civ. P. 5.2(3)(a), I use initials in place of any minor's name.  I note that the parties have freely used the names of both P.A. and his sister, J.A., in their filings.  The parties are directed to comply with Rule 5.2(3)(a) to protect the privacy of both infants.

P.A. and that she has demonstrated her dedication to the child's best interests by instigating an investigation into his disappearance and filing a lawsuit on his behalf.[2]  Alford also responded to my order to show cause on May 27, 2011.  He argues that he is authorized to bring suit on P.A.'s behalf without being appointed next friend because a state family court order issued after P.A.'s disappearance deemed Alford a suitable parent for P.A. and paroled P.A. to Alford's care. Alford contends that but for P.A.'s disappearance, he would be in Alford's physical custody.

Appointment of a guardian is governed by Fed. R. Civ. P. 17(c), which provides that a minor may be represented in a federal action by a general guardian, a committee, a conservator, or a like fiduciary.  Fed. R. Civ. P. 17(c)(1).  "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c)(2).  "To qualify as a 'representative' for purposes of Rule 17(c), [an individual] must have capacity to sue on the children's behalf under the law of New York, the forum state."  *DeBruyne v. Clay*, No. 94-CV-4704 (JSM), 1995 WL 51134, at *2 (S.D.N.Y. Feb. 8, 1995) (citing *Slade v. Louisiana Power & Ligh Co.*, 418 F.2d 125 (5th Cir. 1968), *cert. denied*, 397 U.S. 1007 (1970)); *see also S. Ohio Sav. Bank & Trust Co. v. Guaranty Trust Co. of N.Y.*, 27 F.Supp. 485 (S.D.N.Y. 1939).  Under New York CPLR § 1201, "[u]nless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody. . . . A person shall appear by his guardian ad litem if he is an infant and has no guardian, parent, or other person or agency having legal custody . . . or if he is an infant . . .

---

[2]    Rodriguez also suggests that she may be P.A.'s legal custodian, authorized to sue in his name even without court appointment, as she has been P.A.'s custodial parent since birth.  As P.A. was removed from Rodriguez's physical and legal custody by court order shortly before his disappearance, I find this argument meritless.  In any event, Rodriguez does not rely on it and instead seeks an order appointing her as her son's representative.

3

and the court so directs because of a conflict of interest or for other cause . . . ."  A parent who does not have physical custody of a child is not a "parent having legal custody" authorized to bring suit on an infant's behalf.  *Bailey v. Tricolla*, No. 94-CV-4597, 1996 WL 733078, at *4 n.9 (E.D.N.Y. Dec. 11, 1996) (citing *Otero*, 602 N.Y.S.2d at 502).

   In the Second Circuit, a court may "determine that the interests of a child or incompetent will be best represented by a 'next friend' or guardian ad litem and not by an authorized representative such as a parent or general guardian."  *Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District*, 82 F.2d 25, 30 (2d Cir. 1989) (recognizing teachers committee as next friend to underage students where committee was "intimately involved" with subject matter of action, committee instituted suit in good faith, and committee was only group of adults likely to seek vindication of children's rights).  "Both federal and New York state courts have repeatedly affirmed the power of the court to determine that the interests of a child or incompetent would best be represented not by a general representative, such as parent or guardian, but by a guardian ad litem or "next friend."  *Von Bulow by Auersperg v. Von Bulow*, 634 F.Supp. 1284, 1293 (S.D.N.Y. 1986).  Because I conclude that P.A.'s interests will be better represented by a next friend or guardian ad litem than by Alford, I need not determine whether Alford is authorized to represent P.A. without an order of appointment.

   Alford has failed to show a willingness or ability to act zealously in P.A.'s best interests.  *See Ad Hoc Committee of Concerned Teachers*, 82 F.2d at 29 (a federal court has "power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent").  Alford waited more than a

year after P.A.'s disappearance to file suit.  If Alford had used that time to investigate the disappearance and craft a complaint, that delay alone would not suggest an inability to best protect P.A.'s interests.  However, when Alford did finally file a complaint, it was a nearly identical copy of the complaint that had been filed by Rodriguez over five months earlier and had been dismissed by the Court ten days earlier.  In the more than two months since he filed his complaint, Alford has made no effort to serve the defendants, although he knows their identities and their whereabouts.  Counsel suggests in a letter dated May 31, 2011 that the failure to serve is strategic, as he intends to amend his complaint prior to service.  Nonetheless, Alford's general inaction, and in particular his decision to file a complaint nearly identical to one that had already been dismissed in a closely related case, do not inspire confidence that he will vigorously represent P.A.'s interests.

Furthermore, under New York law, even where each parent has an independent right to represent a child, a court may appoint a guardian ad litem where "the record indicates that there are irreconcilable differences between the parents and their respective counsel as to the proper course to be pursued concerning the infant's causes of action."  *Mullins v. Saul*, 515 N.Y.S.2d 561, 636 (2d Dep't 1987).  On April 29, 2011, I encouraged counsel for Rodriguez and counsel for Alford to work together to file a single, joint amended complaint.  On May 13, 2011, Rodriguez filed an amended complaint, in which Alford was not joined as a plaintiff.  On May 16, 2011, counsel for Rodriguez explained to the Court via letter that he and counsel for Alford could not reach an agreement to file a single complaint, as they differed on strategy.  Counsel for Rodriguez suggested that, in light of the disagreement, it might be appropriate for the Court to appoint a guardian for P.A.  I agree.

In deciding whether to appoint Rodriguez or a third party to represent P.A.'s interests, I note a representation made in Alford's May 27, 2011 letter to the Court that there is currently a neglect case proceeding in state family court against Rodriguez, presumably concerning her relationship with P.A.  While the questions at issue in that proceeding may not be directly relevant to this matter, Rodriguez and her son are adverse parties in that case.  In this case as well, Rodriguez has her own objectives.  She has asserted her own claims under state and federal law, alleging that defendants' treatment of P.A. violated her parental rights and interests. Rodriguez will of course be interested in litigating this case to her own advantage, which has the potential to give rise to a conflict of interest.  For that reason, and the reasons stated above, I conclude it is best for Rodriguez to focus on her own interests and for the Court to appoint a disinterested third party to represent P.A. in this case.

Accordingly, I exercise my discretion under, Fed. R. Civ. P. 17(c) to "issue [an] appropriate order" to protect P.A., and appoint him independent pro bono counsel.  Skadden, Arps, Slate, Meagher & Flom LLP, by attorneys Jonathan J. Lerner and Robert A. Fumerton, shall serve as pro bono counsel to P.A.  Pro bono counsel are directed to file a single pleading on behalf of P.A. in case number 10-CV-4661, captioned "Second Amended Complaint."  Upon filing of the Second Amended Complaint, the claims raised in P.A.'s name by Rodriguez and Alford in cases 10-CV-4661 and 11-CV-1583 will be dismissed for lack of standing.

So ordered.


John Gleeson, U.S.D.J.

Dated: June 6, 2011
       Brooklyn, New York

# Exhibit B

# JONES HIRSCH CONNORS & BULL P.C.
## ONE BATTERY PARK PLAZA
### NEW YORK, NEW YORK 10004

NEW YORK

MINEOLA

WRITER'S EMAIL

TELEPHONE: (212) 527-1000
FACSIMILE: (212) 527-1680

CONNECTICUT

NEW JERSEY

WRITER'S DIRECT
DIAL NUMBER

cobryan@jhcb.com

Charles E. O'Bryan
Principal

(212) 527-1621

Courtesy copy, original filed by ECF, Docket No.: CV-10-4661

June 16, 2011

**BY HAND/ECF**
Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza, Room 727 S
Brooklyn, New York   11201

> Re: Rodriguez/Alford v. St. Vincent's
> Services, et al
> Civil Docket No.:  CV-10-4661
>
> Patrick Alford v. The City of
> New York, et al
> Civil Docket No.:  CV-11-1583
> Our File No.:       06100-16617

Dear Judge Gleeson:

This letter is being submitted jointly on behalf of St. Vincent's Services, Carlene Anderson, Zoila Villalta as well as defendants City of New York, Natalia Rosado, and Robert Salemi.

We wish to request that this Court schedule a conference to address a number of issues, both substantive and procedural, which have been either created or left unaddressed by the Court's recent decision appointing Skadden Arps Slate Meagher & Flom LLP as pro bono counsel for the infant-plaintiff Patrick Alford, Jr. The Court issued a number of directives within that Order.  Chief among them with instruction to Skadden Arps to file a single pleading on behalf of Patrick Alford, Jr. under the earliest index number and entitle it "second Amended Complaint."

Hon. John Gleeson               -2-                June 16, 2011

     We are in receipt of incoming counsel's application for an
adjournment. We have no objection to their requested adjournment,
and Your Honor has already issued an order granting the extension
to and including August 5, 2011.

     While we have no objection to this request we would ask
that the Court schedule a conference at its earliest convenience
to address the following issues, including your directive that
the defendants move or respond to the Mother's complaint on or
before July 5, 2011:

     (a)  The Complaint filed by Patrick Alford, *Sr*. is a mirror
image of the original Complaint of Ms. Rodriguez which this Court
dismissed – with prejudice against several defendants and with
leave to file an amended new Complaint as against the remaining
defendants.  Your Honor has indicated in its June 14 order that
since defendants have not yet been served, there is no obligation
to respond.  However, we believe that leaving this complaint in
abeyance would cause confusion and undue litigation among the
parties;

     (b)  Previously the Court directed the biological parents of
Patrick Alford, Jr. to work collegially and file a single
Complaint addressing the issues of representation of the child.
Counsel for Mr. Alford, Sr. failed to do so and only
Ms. Rodriguez opted to file a Complaint (which itself should have
been entitled the "second Amended Complaint").   There is a need
for motion practice as to Ms. Rodriguez's Complaint.   However,
Your Honor's June 14 order requires the defendants to move or
answer by July 5, one month before an Amended Complaint will be
filed by the Skadden Arps firm.   Because Ms. Rodriguez's claims
are dependent on those claimed by her son, the defendants believe
that putting her case on an earlier track will be similarly
confusing and a waste of judicial resources; and

     (c)  In appointing Skadden Arps, the pro bono counsel for
the missing infant-plaintiff the Court has firmly addressed the
issue of legal representation for the child, but no Guardian or
Next Friend has been appointed.

     We would further request that this Court schedule a
conference at its earliest convenience to address the following
additional issues:

     1.   The entertaining of motions with respect to the
Complaint of Patrick Alford, Sr.  It is indisputable that
Mr. Alford's claims are identical to those set forth by

Hon. John Gleeson                -3-                    June 16, 2011

Ms. Rodriguez in her original Complaint.  As was briefly
recounted above, motion practice resulted in dismissal and a
direction to file a further Amended Complaint.  The claims
contained in Mr. Alford's Complaint must be addressed.  While we
acknowledge that service has not occurred, as Your Honor
referenced in the June 14 Order, the complaint is still pending.
 It should either be dismissed or counsel be directed to re-plead
by a date certain; and

        2.    The entertaining of motions with respect to the most
recent filing by Ms. Rodriguez.  It is undisputed that as a
matter of constitutional law, a parent has a separate - a
derivative - claim only if there is a constitutional violation of
a child's rights both alleged and proven.  We believe that a
motion exists as to Ms. Rodriguez's Complaint as currently
pending.   However, we do not believe it is in the interest of
the parties or the court to begin this motion practice on July 5,
well before an amended complaint is filed on behalf of Patrick,
Jr.

        While the Court has disposed of one aspect of   the problem
regarding Patrick Jr.'s best interests, another remains.   This
brings us to the next issues which are conjoined:  the continued
absence of the child and the posture of Skadden Arps.

        Although this Court appointed counsel, who may certainly
represent the child's legal interests, the Guardian Ad Litem or
"Next Friend" makes decisions in consultation with counsel who,
in turn, must confer with their client.  The child has been
missing for more than a year.  Efforts are ongoing by the New
York City Police Department (NYCPD) to locate the child.  By all
accounts there have been several hundreds of interviews conducted
as well as forensic investigations - all to no avail.

        Among the things that we would urge this Court to consider
would be the appointment of a Guardian Ad Litem and, immediately
upon this appointment, considering placing the matter on the
"suspense calendar" until one of three things occurs:  First,
the child is located - healthy and unharmed, preferably - in
which case a determination as to whether to proceed with the
reactivation of the case can occur or, conversely, the child's
corpse is located then in which case another set of
considerations will confront all parties to this action; or the
NYPD formally announces that it has exhausted all resources and
cannot locate the child or, finally, there is a judicial
determination that the child has died.

Hon. John Gleeson                -4-                June 16, 2011

        In view of these unresolved issues, we would also request
that the Court modify the provisions of the June 14 Order which
direct the defendants to "...answer or move to dismiss
Rodriguez's own claims on or before July 5, 2011."

        We would urge the Court to conduct this conference so that
we may address all these issues at one time with all parties
present, with a resulting omnibus order to be issued by this
Court.

                                Respectfully submitted

                                *Charles E. O'Bryan*
                                Charles E. O'Bryan

CEO/dml

cc:  **VIA ECF**
     **LAW OFFICE OF ROBERT ALEXANDER OSUNA, P.C.**
     Attorneys for Plaintiffs
     11 Park Place, Suite 600
     New York, New York  10007

     Ambrose Wotorson, Esq.
     Attorney for **Plaintiff Jennifer Rodriguez**
     26 Court Street, Suite 1811
     Brooklyn, New York  11211

     LAW FIRM OF JAMES R. LAMBERT, ESQ.
     Attorney for **Plaintiff Patrick Alford, Sr.**
     1491 Richmond Road
     Staten Island, New York  10304

     **VIA E-MAIL shalbardier@bmmfirm.com**
     Barry McTiernan & Moore
     Attorneys for **Defendants City of New York,**
       **Natalia Rosado, and Robert Salemi**
     2 Rector Street
     New York, New York  10006
     Attn:  Susan M. Halbardier, Esq.

Hon. John Gleeson                -5-              June 16, 2011

**VIA E-MAIL ECF and jonathan.lerner@skadden.com**
Jonathan J. Lerner, Esq.
Skadden Arps Slate Meagher & Flom LLP
**Pro-Bono counsel for Patrick Alford, Jr.**
4 Times Square
New York, New York  10036

**VIA E-MAIL ECF and robert.fumerton@skadden.com**
Robert A. Fumerton, Esq.
Skadden Arps Slate Meagher & Flom LLP
**Pro-Bono counsel for Patrick Alford, Jr.**
4 Times Square
New York, New York  10036

**VIA ECF and E-MAIL jonathan.lerner@skadden.com**
Jonathan J. Lerner, Esq.
Skadden Arps Slate Meagher & Flom LLP
**Pro-Bono counsel for Patrick Alford, Jr.**
4 Times Square
New York, New York  10036

**VIA ECF and E-MAIL patrick.rideout@skadden.com**
Patrick G. Rideout, Esq.
Skadden Arps Slate Meagher & Flom LLP
**Pro-Bono counsel for Patrick Alford, Jr.**
4 Times Square
New York, New York  10036

**VIA CERTIFIED MAIL/RRR**
Ms. Librada Moran
130 Vandalia Avenue, #11B
Brooklyn, New York  11239

824740

# Exhibit C

# JONES HIRSCH CONNORS & BULL P.C.
## ONE BATTERY PARK PLAZA
### NEW YORK, NEW YORK 10004

NEW YORK

———

MINEOLA

———

WRITER'S EMAIL

**cobryan@jhcb.com**

**Charles E. O'Bryan**
**Principal**

TELEPHONE: (212) 527-1000
FACSIMILE: (212) 527-1680

CONNECTICUT

———

NEW JERSEY

———

WRITER'S DIRECT
DIAL NUMBER

**(212) 527-1621**

**Courtesy copy, original filed by ECF, Docket No.: CV-10-4661**

November 22, 2011

**BY HAND/ECF**
Honorable Steven M. Gold
Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza, Room 13D
Brooklyn, New York 11201

Re:  Rodriguez v. St. Vincent's
     Services, et al
     Civil Docket No.:  10-CV-4661

     Patrick Alford v. The City of
     New York, et al
     Civil Docket No.:  11-CV-1583
                        10-CV-04661

     P.A., Jr. v. City of New York; et al
     Civil Docket No.: 10-CV-04661

     Our File No.:      06100-16617

Dear Magistrate Gold:

     This office represents St. Vincent's Services, Inc., s/h/a
St. Vincent's Services Incorporated, Carlene Anderson, and Zoila
Villalta in the above-referenced matters.

     This will serve to acknowledge receipt of the objection by
Mr. Lerner, counsel for "P.A." (for whom no guardian has been
appointed) to our application for an extension of time – of
thirty days – to provide discovery responses.

Hon. Steven M. Gold                    -2-              November 22, 2011

        It is disingenuous - but quite in keeping with the
longstanding practice of that office - that the objection was
filed with the Court at 11:52 p.m. on November 21, 2011.   This
thereby effectively precluded any response until today.

        First, to deal with a peripheral issue.  Attached hereto are
copies of the previously served Initial Disclosure - which all
other counsel have received - together with the proof of mailing
upon the sole individual - Librada Moran - does not have access
to the Court's ECF system.  Not surprisingly,  counsel waits
until the moment this extension request has been made to claim
that he has never received our previously served responses - over
one month ago.

        We will submit a separate formal objection to the responses
to interrogatories offered by counsel for "P.A.", today as
ordered.

        Nevertheless, it should be pointed out to this Court as we
are sure counsel is fully aware, that pursuant to Rule 33(b) of
the Federal Rules of Civil Procedure when a party is an
*individual,* the party, not the attorney, must sign a verification
or affidavit as to the accuracy of the answers.  See, for
example, <u>Abrams v. Ciba Specialty Chemicals Corp.</u>, F.R.D. (S.D.
Ala. 2010) if the signature is not under oath, it does not
satisfy Rule 33(b)).

        We have not had an opportunity to review the revisions to
the proposed Confidentiality Agreement - which again was not
circulated until last night.  We can only respond after we have
done so.  Should the Confidentiality Order proposed by the City
prove acceptable we agree to be bound by it on condition that all
parties consent to same.  Once again, however, we request the
Court to review the reasons posed in the original application and
allow a thirty day extension of time in which to respond.

        We thank the Court for its attention to this matter.

                            Respectfully submitted,

                            Charles E. O'Bryan

                            Charles E. O'Bryan

CEO/dml
Enclosures

Hon. Steven M. Gold                    -3-              November 22, 2011


cc:   **VIA HAND/ECF**
      Honorable John Gleeson
      United States District Court
      Eastern District of New York
      225 Cadman Plaza, Room 727 S
      Brooklyn, New York  11201


      **VIA ECF**
      **LAW OFFICE OF ROBERT OSUNA, P.C.**
      Attorneys for **Plaintiff Jennifer Rodriguez**
      11 Park Place, Suite 600
      New York, New York  10007
      (212) 233-1033

      ~~**LAW OFFICES OF AMBROSE W. WOTORSON, JR.**~~
      Attorneys for **Plaintiff Jennifer Rodriguez**
      26 Court Street
      Brooklyn, New York  11242-1118
      (718) 797-4861

      **LAW FIRM OF JAMES R. LAMBERT, ESQ.**
      Attorney for **Plaintiff Patrick Alford, Sr. and "J.A."**
      1491 Richmond Road
      Staten Island, New York  10304
      (718) 667-5000

      **SKADDEN, ARPS, SLATE, MEAGHER**
       **& FLOM LLP**
      Attorneys for **Plaintiff, P.A., JR.**
      Four Times Square
      New York, New York 10036
      (212) 735-3000
      **Attn: Jonathan J. Lerner, Esq.**

      **BARRY McTIERNAN & MOORE**
      Attorneys for **Defendants CITY OF NEW YORK,**
      **OMAR LOFTON, ROBERT SALEMI, NATALIA ROSADO,**
      **ZANETTE SARGEANT, SHARICE SCOTT, EMMANUEL**
      **OKON, and JAKE NIXON, JR.**
      2 Rector Street
      New York, New York  10006
      (212) 313-3606
      **Attn:  Suzanne M. Halbardier, Esq.**

Hon. Steven M. Gold          -4-          November 22, 2011

**KRAL CLERKIN REDMOND RYAN PERRY & VAN ETTER**
Attorneys for Defendants **KATHLEEN BENITEZ and MARIA PENA**
538 Broadhollow Road, Suite 200
Melville, New York 11747
(631) 414-7930
**Attn: Thaddeus J. Rozanski**

**VIA CERTIFIED MAIL/RRR and REGULAR MAIL**
Ms. Librada Moran
130 Vandalia Avenue, #11B
Brooklyn, New York  11239

838328

# Exhibit D

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3      --------------------------------X
                                        :
 4      JENNIFER RODRIGUEZ,             :
                                        :   10-CV-04661 (JG)
 5                      Plaintiff,      :
                                        :
 6                 v.                   :
                                        :   225 Cadman Plaza East
 7      ADMINISTRATION FOR CHILDRENS    :   Brooklyn, New York
         SERVICES, et al,               :
 8                                      :
                        Defendants.     :   November 28, 2011
 9      --------------------------------X

10          TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
                   BEFORE THE HONORABLE STEVEN M. GOLD
11              UNITED STATES CHIEF MAGISTRATE JUDGE

12
        APPEARANCES:
13
        For PA:                 JONATHAN LERNER, ESQ.
14                              ROBERT FUMERTON, ESQ.
                                PATRICK RIDEOUT, ESQ.
15                              THOMAS HALEY, ESQ.

16      For Rodriguez:          ROBERT OSUNA, ESQ.

17      For Pat Alford and JA:  JAMES LAMBERT, ESQ.

18      For St. Vincent's:      CHARLES O'BRYAN, ESQ.
                                ZOILA VILLALTA, ESQ.
19                              CARLENE ANDERSON, ESQ.

20      For City Defendants:    DAVID SCHULTZ, ESQ.

21      For the NYPD:           JANICE C. SILVERBERG, ESQ.

22

23      Court Transcriber:      MARY GRECO
                                TypeWrite Word Processing Service
24                              211 N. Milton Road
                                Saratoga Springs, NY 12866
25


        Proceedings recorded by electronic sound recording,
        transcript produced by transcription service
```

11

1          THE COURT:  Okay.  Didn't do a full count?

2          MR. LERNER:  No, we stopped at 25.

3          THE COURT:  Were you more than halfway through the

4   list?

5          MR. LERNER:  No.

6          THE COURT:  Well, yes, Mr. Schultz?

7          MR. SCHULTZ:  We received responses [unintelligible]

8   --

9          THE COURT:  And how many did you have in total?

10         MR. SCHULTZ:  [Inaudible].

11         THE COURT:  Okay.  I'm expanding the number of

12  interrogatories permitted to 50 in light of the complexity and

13  size of the case.  If they're close to 50 and they're 52, 53, I

14  don't want to hear from you again.  If it's abusive and you

15  really think it's disproportionate to the scope of the

16  litigation, you can renew your objection but I don't want to

17  hear a technical objection based on the number of subparts from

18  anyone.  The case is too complicated for that.

19         Let's talk about Staten Island -- excuse me, St.

20  Vincent's Services' objection to plaintiff's responses to

21  interrogatories on the grounds that they're not signed by PA or

22  a guardian or legal representative to PA.  I understand your

23  contention correctly?

24         MR. O'BRYAN:  Yes.

25         THE COURT:  I can't help but think about the fellow

12

1    who kills his parents and then complains about his status as an

2    orphan, but I don't think that's productive to think of it that

3    way in this context.  I don't intend to make any discovery

4    rules based on the failure to have the party sign the

5    documents.  There's no prejudice to the defendants from those

6    responses at this stage of the case.

7            However, I think Mr. O'Bryan's -- I apologize, is it

8    O'Bryan or Bryan?

9            MR. O'BRYAN:  Yes, it is O'Bryan.

10           THE COURT:  Yes.  I apologize if I called you Mr.

11   Bryan.  Mr. O'Bryan's letter, while perhaps exceedingly

12   technical in the context of unsigned interrogatory responses,

13   does raise a question that may be worth confronting sooner

14   rather than later which is as discovery begins to progress, it

15   may well be that the defendants will make a Rule 68 offer of

16   judgment at some juncture.  It may well be that a settlement

17   offer in another format is offered, or that other decisions

18   that should bind the plaintiff will need to be decided upon.

19   And I'm just wondering what you're thinking about in terms of

20   what the most appropriate and lawful way to proceed in that

21   respect is.  Certainly, I don't say anything disparaging toward

22   you or your firm when I ask the question, but I also don't want

23   to see you put in an ethically awkward posture by virtue of a

24   very substantial pro bono undertaking.

25           MR. LERNER:  I think, first of all, with respect to

1   the current, the technical issue, you don't have to go beyond

2   right or more to see that when you have an infant or

3   incapacitated client the attorney may verify those.  But Your

4   Honor is raising a different issue.  And there is a guardian ad

5   litem appointed in the Family Court.  We haven't met him yet.

6   That's one possible avenue, and the other is Judge Gleeson who

7   started this issue, and the court might be, you  know, the

8   proper vehicle because the cases do say that the ultimate

9   parens patriae for an infant would be the court.  And we could

10   make a recommendation such as a class action ultimately to Rule

11   26.  The court is the person to protect everybody.

12           THE COURT:  You mean Rule 23?

13           MR. LERNER:  Class action.  Rule 23.  Sorry.  We're

14   here on a discovery conference.  You're right, Your Honor.  But

15   that was our thinking.  But we're painfully aware that that

16   issue exists but we don't think it's a real issue with respect

17   to the interrogatory responses and had the same reaction that

18   Your Honor did to the issue that was raised.

19           THE COURT:  Can you suggest a time frame by which you

20   would either ask Judge Gleeson to appoint the Family Court's

21   guardian ad litem to represent PA in this case or make some

22   other application or express an indication of your intentions

23   in that regard?

24           MR. LERNER:  We were going to grapple with that on

25   the first that seemed to require it.  We would sort of kick the

14

1   can until actually down the road.

2          THE COURT:  Yes, I understand.  But let's assume a

3   Rule 68 offer to which they're entitled to a response within,

4   what is it, ten days or 14 days?  And, you know, that's going

5   to be too short a time frame to resolve this.  And then if it's

6   denied and you --

7          MR. LERNER:  I don't want to pay the cost.  I don't

8   want to pay even their transcript cost.

9          THE COURT:  Yes.  Right?  So I just don't want it to

10  come up and bite us in the back when a decision needs to be

11  made on a short notice.

12         MR. LERNER:  We could write to Judge Gleeson and ask

13  him what he has in mind.  He originally -- the order to show

14  cause originally contemplated the appointment of a guardian ad

15  litem, not pro bono counsel.  Ultimately the judge's order

16  appointed pro bono counsel.  It wasn't clear to us what Judge

17  Gleeson had in mind.

18         THE COURT:  Yes.

19         MR. O'BRYAN:  If I could weigh in momentarily on

20  that.  I apologize.  I'm sorry, I apologize.  This was

21  something that was brooded about early on and often before

22  Judge Gleeson up to the point of the order to show cause, even

23  after that with respect to the fact that the initial order,

24  which is document number 70, addressed the issue of the

25  standing of the biological parents and addressed disposing the

15

1  issue of the claims on behalf of PA but not the sister.  Those

2  were raised again.  And in reviewing Judge Gleeson's order  I

3  have to agree with counsel, who would have thought, that none

4  of us can understand what he was contemplating.  Now, I don't

5  think the -- one of the reasons for the letter was so that we

6  wouldn't kick the can down the road because at some point the

7  child may well be found or may be found, sad to say, dead.  We

8  do have to confront those issues sooner than later.  I

9  understand that in and of itself, I read the same cases that

10  counsel did, there are instances where the attorney can sign

11  but in those instances there is a viable client, there is an

12  [unintelligible] who lacks any sort of knowledge and the court

13  says well fine, the attorney can sign.  He's not making himself

14  a witness by him doing this.

15         But in this instance, we may well have to return to

16  Judge Gleeson for resolution of that particular issue because I

17  don't think it's --

18         THE COURT:  Well, I --

19         MR. O'BRYAN:  -- I don't think, with all due respect,

20  it's hyper-technical to raise this again because --

21         THE COURT:  I don't mind you raising the subject.  I

22  just think it's more pressing as a global question about the

23  conduct of the litigation than it is in the particular context.

24  I appreciate the fact that you brought up the subject lest it

25  escape our attention in the heat of adversarial discovery, but

16

1   I'm not going to grant you any discovery related relief with

2   respect to it now.

3             MR. LERNER:  We'll move this to the front burner,

4   maybe right to Judge Gleeson and raise the issue and ask him to

5   clarify how he would like to proceed.

6             THE COURT:  Yes, and I'm sure he would welcome a

7   suggestion from you because if he had a firm idea about it that

8   he wanted to see implemented, I suspect we would know that by

9   now.  And he probably wants to make sure that, you know, we

10  find someone who will work well with the efforts that you've

11  undertaken and communicate easily with you.  So I'm sure your

12  input would be appreciated.

13            MR. LERNER:  Thank you, Your Honor.

14            THE COURT:  Can I ask you then maybe by December 15th

15  to have something to the court or even if it's a letter saying

16  you need a little more time?

17            MR. LERNER:  Sure.

18            THE COURT:  Okay.  Just so we know it doesn't fall

19  through the cracks because I know it doesn't have any practical

20  urgency now but I'd rather have it addressed while we have that

21  luxury.

22            MR. LERNER:  We will do that.

23            THE COURT:  What am I missing in terms of discovery

24  applications?  Mr. Fumerton?

25            MR. FUMERTON:  Your Honor, with respect to the