# JONES HIRSCH CONNORS & BULL P.C.
### ONE BATTERY PARK PLAZA
### NEW YORK, NEW YORK 10004

TELEPHONE: (212) 527-1000
FACSIMILE: (212) 527-1680

NEW YORK

MINEOLA

WRITER'S EMAIL

CONNECTICUT

NEW JERSEY

WRITER'S DIRECT
DIAL NUMBER

cobryan@jhcb.com

Charles E. O'Bryan
Principal

(212) 527-1621

Courtesy copy, original filed by ECF, Docket No.: CV-10-4661

February 22, 2012

**BY HAND/ECF**
Honorable Steven M. Gold
United States Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 13D
Brooklyn, New York  11201

Re:  Rodriguez v. St. Vincent's
     Services, et al
     Civil Docket No.:  10-CV-4661

     Patrick Alford v. The City of
     New York, et al
     Civil Docket No.:  11-CV-1583
                        10-CV-04661

     P.A., Jr. v. City of New York; et al
     Civil Docket No.:  10-CV-04661

     Our File No.:      06100-16617

Dear Magistrate Gold:

    This office represents St. Vincent's Services, Inc. s/h/a St. Vincent's Services Incorporated, Carlene Anderson, and Zoila Villalta in the above-referenced matters.  This letter is being written in response to the update issued by counsel for Patrick Alford, Sr. and "J.A."  This is also being submitted to request a reconsideration of the Court's refusal to stay discovery for thirty days as requested at the conference on January 27, 2012 by defense counsel.

Hon. Steven M. Gold -2- February 22, 2012

As the Court may recall by letter dated January 20, 2012 (a copy of which is annexed and is also listed on the Court file as Document #177) Mr. Lambert, counsel for Mr. Alford and J.A. informed the Court that his client was "...the victim of a shooting on Monday January 16, 2012. Although it is not clear what exactly happened, it appears that he was shot twice, once in the head and once in the leg...."

Mr. Lambert further noted that at the time of his letter he was "...advised by members of [Mr. Alford's] family that he is in critical condition and in a coma. <u>Whether he will recover from his injuries, and if so, the extent of his injuries, is still unknown....</u>" (Emphasis added)

Mr. Lambert concluded the letter by noting that he was "...not seeking the appointment of a guardian for Mr. Alford, as is not clear whether he will be incapacitated, either permanently or for an extended period of time, by his injuries...." (sic)

It was this Court that first raised the issue of guardianship during the appearance of January 27, 2012. The Court's concern seemed to be nevertheless with the infant. Specifically, the Court queried counsel:

> What do you intend to do about your role -- and I know this is very recent and it must be very overwhelming and I don't know what the right answer is, so I'm not trying to suggest anything pedantic in the way I ask the question or that it's a flaw on your part if you don't have an answer to this, but what -- <u>have you thought about or determined what your next step is and what your responsibilities are as an attorney for a young person who is, in essence, without a legal guardian for practical purposes and an adult who is not able to assist you in the prosecution of his claim at least for the foreseeable future....</u>" (Emphasis added) (Transcript, 1/27/12, p. 8, lines 4-14)

More pointedly the Court queried:

> "Do you believe that there are any ethical constraints on your continuing to represent their interests in discovery when one is incapacitated as a minor and one is incapacitated by injury" (Tr., 1/27/12, p. 9, lines 16-19)

Hon. Steven M. Gold -3- February 22, 2012

Both defense counsel immediately moved for a limited stay of all discovery - thirty days.

Over the objection of defense counsel, Your Honor ruled that:

> "...don't see any reason not to go forward. This is clean-up discovery. The parents of these children are very secondary as witnesses with respect to what's occurred and the issues at stake in this case really revolve around the behavior of the defendants, not the behavior of the plaintiffs." (Tr., 1/27/12, p. 13, l. 23-p. 14, l. 3)

We must respectfully take exception to the Court's characterization of the claims of any viable plaintiff as "peripheral" as well as the Court's assertion that the request for a stay was "...based upon the speculative possibility that at some point in the future Mr. Alford will recover to a sufficient extent and that he recall and be able to testify about events that occurred years ago...." (Tr., 1/27/12, p. 14, lines 11-14).

The Court crafted a remedy of sorts by directing Mr. Lambert to provide "...biweekly status reports" on Mr. Alford's status as well as directing that all parties be advised of Mr. Lambert's "...thinking about guardianship and to the extent you intend to moving forward with it whether you are seeking the appointment of a family member or something more akin to the way Judge Gleeson and Skadden Arps came to be appointed in this case and whether you are going to ask the Court to appoint an attorney pro bono...." (Tr., 1/27/12, p. 15, lines 18-23).

By letter dated February 15, 2012 (document #187 in the ECF filing) Mr. Lambert provided the first of his biweekly reports. It is illustrative of the continued incapacity of Mr. Alford, but makes no reference to the issue of guardianship.

Although we were advised that Mr. Alford is "...now conscious, alert, and breathing without the assistance of a respirator" he is nevertheless on a feeding tube. We were also informed that he is unable to speak and will be receiving speech therapy. More troubling is the statement that "...(h)e requires further surgery to his head, to repair/replace the missing portion of his scalp. <u>That surgery is scheduled to take place in about 2-1/2 months, after he first undergoes traumatic brain injury therapy</u>...." (Emphasis added).

Hon. Steven M. Gold  -4-  February 22, 2012

Interestingly, we do not have the source of Mr. Lambert's information. He concedes that "...although (he) believe(s) this information to be reliable" he "does not have direct access to Mr. Alford's doctor nor his medical information...."

However peripheral the Magistrate may believe Mr. Alford's claims are the defendants are entitled to discovery including, but not limited to, a deposition. That Mr. Alford is required to undergo "traumatic brain injury therapy" for an undisclosed period of time and that at some point - well past the two and a half months when the reconstructive surgery *may* be conducted - according to Mr. Lambert, Mr. Alford *could make* a full recovery, the defendants remain steadfast in their right and obligation to conduct full discovery.

This Court noted that:

"Right now it's too speculative to warrant stopping. We're in the middle of these discovery issues. We're on the verge of closing up this document discovery. I want to get it done. I want to move on to the next phase of the case." (Tr., 1/27/12, p. 15, lines 1-6."

While document production is "on the verge of closing" Mr. Alford's participation in testimonial phase of the case should not be marginalized nor the defendants' rights to discovery prejudiced.

Whether Mr. Alford - who is by any account undeniably mentally and physically incompetent to participate in these proceedings - however transitorily - and his daughter "J.A.", who is incompetent by way of her minority, need guardians is indisputable. Also unaddressed by this Court's ruling are the ethical considerations attendant to Mr. Lambert acting as counsel to his undeniably incompetent clients, continuing the case without a guardian.

We would respectfully submit that Mr. Lambert's silence on this issue is disingenuous and we would further submit that as a matter of law neither Mr. Alford nor "J.A." can proceed or participate in this litigation without a guardian.

This should not be viewed as a dilatory tactic, but as an attempt to ensure that the rights of all parties in this action are protected - both plaintiffs and defendants. A thirty day stay of discovery will not prejudice any party to this lawsuit in any way. Indeed, the efforts to locate the missing P.A. continue

Hon. Steven M. Gold -5- February 22, 2012

apace. Ms. Rodriguez's remaining claim is preserved, and the defendants are not placed in the position of conducting discovery and being subjected to depositions when there has not been any *quid pro quo*.

While our prior applications and objections to variances from the Federal Rules of Civil Procedure were described by this Court as being "hypertechnical", we respectfully submit that this application be given serious consideration in light of the current developments.

As voiced by counsel for the City, it is also our understanding that during our appearances before Judge Gleeson it was his intent that the cases proceed together and not piecemeal.

We respectfully submit that because depositions of the plaintiffs are currently scheduled for March 5, 6, and 7 (see document #165) there is no rational basis for assuming that Mr. Alford will be prepared to testify or participate by that time - as conceded in Mr. Lambert's letter of February 21, 2012, a copy of which is attached, which expressly states that it is "...<u>unlikely that [Mr. Alford] will be well enough to be deposed</u> by mid-March...." (Emphasis added)

It is respectfully submitted that in seeking reconsideration we are pointing to the physical and mental condition of Mr. Alford and the continued lack of a guardian for J.A. as issues which the Court may have overlooked in denying the defense application for a thirty day stay of discovery. It is respectfully submitted that these are matters that, as stated in the decision of the Court in <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) "...might reasonably be expected to alter the conclusion reached by the Court...."

We thank this Court for its attention to this matter.

Respectfully submitted,

Charles E. O'Bryan

Charles E. O'Bryan

CEO:dml
Enclosure

Hon. Steven M. Gold     -6-     February 22, 2012

cc:   **VIA HAND/ECF**
Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza, Room 727 S
Brooklyn, New York 11201

**VIA ECF**
**LAW OFFICE OF ROBERT OSUNA, P.C.**
Attorneys for **Plaintiff Jennifer Rodriguez**
11 Park Place, Suite 600
New York, New York 10007
(212) 233-1033

**LAW OFFICES OF AMBROSE W. WOTORSON, JR.**
Attorneys for **Plaintiff Jennifer Rodriguez**
26 Court Street
Brooklyn, New York 11242-1118
(718) 797-4861

**LAW FIRM OF JAMES R. LAMBERT, ESQ.**
Attorney for **Plaintiff Patrick Alford, Sr. and "J.A."**
1491 Richmond Road
Staten Island, New York 10304
(718) 667-5000

**SKADDEN, ARPS, SLATE, MEAGHER**
**& FLOM LLP**
Attorneys for **Plaintiff, P.A., JR.**
Four Times Square
New York, New York 10036
(212) 735-3000
**Attn: Jonathan J. Lerner, Esq.**

**BARRY McTIERNAN & MOORE**
Attorneys for **Defendants CITY OF NEW YORK, OMAR LOFTON, ROBERT SALEMI, NATALIA ROSADO, ZANETTE SARGEANT, SHARICE SCOTT, EMMANUEL OKON, and JAKE NIXON, JR.**
2 Rector Street
New York, New York 10006
(212) 313-3606
**Attn: Suzanne M. Halbardier, Esq.**

**VIA CERTIFIED MAIL/RRR and REGULAR MAIL**
Ms. Librada Moran
130 Vandalia Avenue, #11B
Brooklyn, New York 11239

845851