BARRY, MCTIERNAN & MOORE

COUNSELORS AT LAW

2 RECTOR STREET

| WESTCHESTER OFFICE | NEW YORK, NEW YORK 10006 | CONNECTICUT OFFICE |
|---|---|---|
| 55 CHURCH STREET | | 27 LONG MEADOW ROAD |
| WHITE PLAINS, NY 10601 | | TRUMBULL, CT 06611 |
| TEL: (914) 946-1030 | TEL: (212) 313-3600 | TEL: (203) 261-8060 |
| FAX: (914) 946-3814 | FAX: (212) 608-8901 | FAX: (203) 268-0384 |
| | FAX: (212) 608-8902 (TOXIC TORT) | |

March 1, 2012

***Via ECF***
Chief Magistrate Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza, East
Brooklyn, NY 11201

Re:  Rodriguez v. the City of New York
     P.A. Jr. v City of New York
     Alford v City of New York
     10 CV 4661 and 11 CV 1583

Dear Judge Gold:

   This office represents the City of New York ("City" or "Defendant") in this action. I write to bring to the Court's attention Defendant's concerns regarding the enclosed Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) ("Dep. Not.") served on the City by counsel for plaintiff P.A. Jr. ("Plaintiff" or "P.A. Jr.") – specifically, the six items listed on "Schedule A" thereto as topics to be covered during a deposition that Plaintiff has noticed "to continue from day to day until completed." Dep. Not. at 2. The City objects to the Schedule A items, as the scope of this proposed deposition far exceeds what was discussed during prior status conferences and embodied in Your Honor's discovery orders. Moreover, much of the information regarding ESI that Plaintiff seeks through inquiry addressed to many of the Schedule A items has already been made available to Plaintiff's counsel on a voluntary, cooperative basis, by a member of the New York City Law Department's Litigation Support Department who has been in consultation with ACS IT staff.

   Accordingly, the City respectfully requests that Your Honor schedule a conference in order to avoid needless and burdensome discovery of information already

provided, and to preclude inquiry into other matters listed on Schedule A that are neither necessary nor appropriate.

The January 27, 2012 discovery conference:

At the last discovery conference on January 27, 2012, I raised strong concerns about Plaintiff's demand to know every ACS custodian who received a preservation notice in connection with this litigation. In response, Your Honor made clear that while the ACS defendants would be required to provide information about the nature and availability of ESI for a limited set of key players, that set "was not necessarily coincident with who received a litigation hold memo." Tr. 1/27/12 at 35:15-17. As Your Honor explained, "I don't think Skadden wants to know who does Ms. Halbardier think is important enough to get a litigation hold memo." Tr. 1/27/12 at 34:14-16. "[Plaintiffs' counsel] don't need to know everybody in the agency, but those people who are pertinent to the case." *Id.* at 37:6-8. As to those "key players," Your Honor indicated that defendant was to identify "whose [ESI] was available, over what date ranges, and in what kind of storage medium, and how it can be searched." *Id.* at 38:13-18. Your Honor further directed that if Plaintiff's counsel believed any key player was missing from that list, counsel should inform me. *Id.* at 38:21-24.

At the same conference, I asked for clarification of Plaintiff's intention regarding the need for a 30(b)(6) witness. Your Honor deferred that discussion pending service of a notice of deposition of such witnesses. *Id.* at 29:11-24. In the meantime, in recognition of the limits of my knowledge regarding ESI, I offered to make an IT-literate person available to Plaintiff's counsel to move the discussion forward regarding ESI related to this "much more finite list" of key players. *Id.* at 38:25 – 39:14.

Developments following the discovery conference:

Consistent with the offer I made during the conference, and with my understanding that parties are to co-operate in developing certain basic protocols regarding e-discovery under the Federal Rules, the City made available to P.A. Jr.'s counsel and their IT staff a member of the New York City Law Department's Litigation Support Unit, Heidi Grygiel. On February 3, 2012, an informational telephone call took place in which Ms. Grygiel participated. In preparation for the call, Ms. Grygiel reviewed a transcript of the discovery conference and came to the informational telephone call prepared to discuss precisely the categories of ESI which the Court identified at the discovery conference: what ESI was available for the identified key players; the relevant date ranges of that ESI; the relevant storages locations and media available; and the methods by which such ESI could be searched. Ms. Grygiel was also prepared to assist Plaintiff's counsel in understanding the State-maintained Connections database used by ACS.

Defendant had hoped, through this telephone conference, to foster an open exchange of information, in as efficient and informal a manner possible, with the City providing someone knowledgeable about ESI and electronic discovery and familiar with ACS's particular practice (again, consistent with Your Honor's instructions). Unfortunately, P.A. Jr.'s counsel

quickly turned the telephone session from a collegial, instructive exchange into an adversarial confrontation, for example, pressing Ms. Grygiel to identify all those to whom preservation letters had been sent – despite Your Honor's repeated statements that such information was neither relevant nor required to be produced; informing Ms. Grygiel that Your Honor had "ordered" Defendant to make a Connections terminal available to Plaintiff's counsel (apparently assuming Ms. Grygiel's unfamiliarity with the conference transcript, which she promptly cited back to Plaintiff's counsel by page and line to show that Your Honor had only asked that that option be explored for feasibility). When Plaintiff's counsel pressed Ms. Grygiel on matters beyond the scope of topics she was prepared to discuss – for example, the State's document retention policies regarding the Connections database and State-hosted email – Plaintiff's counsel threatened that she "had better become familiar" with them soon. Because of the tone quickly set by Plaintiff's counsel, and their apparent preference for a "gotcha" strategy motivated more by a desire to score points than to obtain useful information, they failed to elicit much of the information that Ms. Grygiel, through her own hard work and good will, had gathered for them.

Notwithstanding Plaintiff's aggressive and counter-productive approach – one I perhaps should have been alerted to by Plaintiff's counsel's prior threat that they would pursue a "scorched earth" litigation strategy – Defendant followed up after the telephone conference with two letters, providing the information identified by Your Honor that Plaintiff had failed to cover due to their decision to pursue a more confrontational approach, as well as information newly demanded by Plaintiff that ranged beyond those topics previously understood to be the agenda for the call.

In a letter dated February 10, 2012, the City provided information about back-up policies for ACS e-mail and file servers (policies that are complicated by the fact that ACS email is hosted by the State, while ACS documents are hosted by the City); and date ranges of data collected for identified key players.

In an additional follow-up letter dated February 16, 2012, Defendant reminded Plaintiff of Your Honor's instruction that Plaintiff communicate with Defendant if counsel believe any key players had been omitted from Defendant's list. I have yet to hear a word from Plaintiff's counsel in response.

Connections File:

Following up on Your Honor's suggestion to pursue the feasibility of permitting Plaintiff's counsel access to a Connections terminal that would be set up to provide access only to limited areas and information in the database, Defendant informed Plaintiff's counsel that, after discussion with ACS, it was clear that such an option would not be feasible. As Defendant explained, there was simply no way to provide Plaintiff's counsel access to the entirety of Plaintiff's Connections file without giving them access to other unrelated matters; to information that was privileged, such as criminal and medical histories, HIV status of family members, and other confidential information; and to information that had been redacted in documents previously produced to Plaintiff.

Additionally, in the February 16th letter, Defendant produced, in PDF form, the October 2011 Connections print-out previously produced in hard copy. The PDF file had each document in the file separately bookmarked. Additionally, the PDF was made fully searchable, even within case notes. Because data housed natively in Connections has very limited search and reporting functions, the fully searchable, bookmarked PDF file provided to Plaintiff is far more robust, useful (and portable) to Plaintiff than a one-time opportunity to sit at a Connections terminal would be. It also provides Defendant reasonable assurance that only relevant, discoverable information is turned over to Plaintiff's counsel.

A copy of our letters dated February 10, 2012 and February 16, 2012 are enclosed.

Plaintiff's 30(b)(6) deposition notice:

While Plaintiff's counsel did not explain the need for a 30(b)(6) witness regarding ESI at the discovery conference – or at any time thereafter – I had assumed that the offer of Ms. Grygiel, combined with Defendant's subsequently provided responses, would obviate the need for that more burdensome process.

Instead, the 30(b)(6) notice served on Defendant seems consistent with Plaintiff's "scorched earth" strategy: The first item listed in "Schedule A" to Plaintiff's deposition notice seeks a deponent competent to testify about the "[p]reparation of Defendant's privilege log and the documents as to which privilege is claimed." Clearly, a privilege log is a document prepared by an attorney in the context of litigation. If Plaintiff seeks to challenge the inclusion of certain specified documents in that log, Plaintiff can move to compel production, in accordance with well established and customary practice. A deposition of the attorney(s) responsible for assembling the privilege log, presumably to ascertain attorney thought processes in its preparation would be an obvious and impermissible intrusion into matters covered by both attorney-client and work product privileges.

"Schedule A" items 2, 3, and 4 concern the structure of the "Defendant's" (presumably ACS's) IT Department and the agency's policies and procedures regarding document management, storage, and back-up retention – information which Defendant has already provided. Topic "5" seeks information as to the identity of every person at ACS who received a document retention notice, although Your Honor has already ruled that ACS is not required to produce this information. *Id.* at 37:3-8; 38:13-24.

Finally, "Schedule A" item 6 asks about document collection for this case. As with topics 2, 3, and 4, Defendant has provided this information to Plaintiff. To the extent any questions remain, Plaintiff is free to request the information, and Defendant will provide it, without the need to resort to a deposition. It is vexing to be required to submit to an avoidable 30(b)(6) deposition merely because plaintiffs chose to subvert a more amicable and efficient process.

Plaintiffs have been provided with over fourteen thousand pages of discovery in this litigation, including the Connections file that is the core source of relevant information in

any ACS case. If, in the course of deposing the relevant witnesses, Plaintiff learns that any discoverable documents have not been produced, they can demand them at that time and, if the documents prove significant, can request that the deponent be recalled.

Proceeding with depositions of relevant fact witnesses, rather than engaging in protracted ESI discovery based on a presumption of spoliation of *Zubulake* or *Pensions Committee* dimension, would be a far more productive use of the parties' time. Determining, through such depositions, whether the files in this case are complete, and if not, identifying what specific information is missing and to what extent such information is relevant to the claims asserted by P.A., Jr. in this matter, would permit a more targeted inquiry in the unlikely event a 30(b)(6) deposition proved necessary on a claim of spoliation.

The City therefore respectfully requests a conference under Your Honor's supervision, to review the City's objections to the 30(b)(6) notice, and to focus discovery on the relevant factual issues and documents. I am informed that Jonathan Pines, a deputy chief in the New York City Law Department's General Litigation Division, who has oversight responsibility for e-discovery issues in that Division, respectfully requests that he be permitted to attend any conference scheduled in connection with this dispute.

Thank you for your consideration.

> Respectfully submitted,
> BARRY, MCTIERNAN & MOORE
>
> By: *Suzanne M. Halbardier*
> Suzanne M. Halbardier

cc: Via ECF
   Robert Alexander Osuna, Esq.
   Skadden Arps Slate Meagher & Flom LLP
   James Lambert
   Attorneys for Plaintiffs

   Charles E. O'Bryan, Esq.
   Jones, Hirsch, Connors & Bull, P.C.
   Attorneys for Defendants St. Vincent's Services, Inc.

   Janice Casey Silverberg, Esq.
   Law Department