UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

P. A., JR., an infant minor,                                    10-CV-04661(JG)(SMG)

                             *Plaintiff,*

                *-against-*

CITY OF NEW YORK; JOHN MATTINGLY,
individually and in his capacity as Commissioner
of the Administration for Children's Services;
DEBORAH PRIDE, individually and in her
capacity as a Child Protective Specialist for the
Administration for Children's Services;
NATALIA ROSADO, individually and in her
capacity as a Child Protective Specialist for the
Administration for Children's Services;
ROSA SOSA, individually and in her capacity as a
Child Protective Specialist for the Administration
for Children's Services; ROBERT SALEMI,
individually and in his Capacity as a Supervisor of
Child Protective Specialists for the Administration
for Children's Services; ST. VINCENT'S SERVICES,
INC.; CARLINE ANDERSON, individually and in her
capacity as a caseworker for St. Vincent's Services,
Inc.; and ZOILA VILLALTA, individually and in
her capacity as a supervisor of caseworkers for St.
Vincent's Services, Inc.,
                           *Defendants.*
-------------------------------------------------------------------------x


### CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
### P.A., JR.'S MOTION TO COMPEL PRODUCTION AND RESPONSES
### TO THE INTERROGATORIES AND FOR AN ORDER DEFERRING DEPOSITIONS

Barry, McTiernan & Moore
2 Rector Street, 14th Floor
New York, New York  100006
By Suzanne M. Halbardier
Attorneys for City Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………….   iii

PRELIMINARY STATEMENT …………………………………………………….   2

ARGUMENT ……………………………………………………………………….…   3

I.   AS THE CITY HAS COMPLIED WITH ITS OBLIGATIONS BOTH
     PURSUANT TO THE FEDERAL RULES AND THE DIRECTIVES
     OF THIS COURT, PLAINTIFF'S MOTION SHOULD BE DENIED………………   3

     A.   The City Has Provided Sufficient Rule 26(a) Disclosure……………………...   3

     B.   The City Has Followed the Directives of the Court in Seeking Out and
          Producing ESI in a Format that is Readily Usable by the Plaintiff……………   4

     C.   The City Has Followed the Court's Directives in Identifying Relevant
          Individuals and Providing Essential Information about the ESI in Their
          Possession, Control or Custody………………………………………………..   6

     D.   The City Served Responses to Plaintiff's Second Set of Interrogatories Which
          Provided all Information as Required under the Federal Rules and the
          Specific Directives of the Court…………………………………….…………   9

     E.   Plaintiff Failed to Follow the Court's Directive in Providing the City With
          Any Additional Names of Individuals Believed to be "Pertinent Players"…...   12

     F.   Plaintiff Failed to Provide the City with Suggested Search Terms and
          Parameters to be Utilized in Tailoring the Scope of any Additional ESI
          Exchanged by the City…………………………………………………………...   13

II.  THE CASES RELIED UPON BY PLAINTIFF ARE DISTINGUISHABLE
     AND PLAINTIFF'S RELIANCE THEREUPON IS THUS
     UNFOUNDED……………………………………………….………………………..   14

     A.   The City Has Complied With the Disclosure Obligations as Set
          Forth By the Court in Zubulake and As Such Plaintiff's Reliance
          on Same is Misplaced…………………………………………………………….   14

B.  Plaintiff's Reliance on <u>Treppel</u> is Misplaced as the City Has in
Fact Produced Documents (Including ESI) Which Are Responsive
to Plaintiff's Requests………………………………………………….  16


C.  In Seeking that the City Disclose the Identities and ESI Information
for ALL Custodians (as Sought by Plaintiff's Interrogatories 1-8),
Plaintiff Relies on Cases Which are Distinguishable From the Instant
Case……………………………………………………..…….  17

CONCLUSION……………………………………………………………………  19

# TABLE OF AUTHORITIES

Cases

Capitol Records, Inc. v. MP3tunes, LLC,
    261 F.R.D. 44 (S.D.N.Y. 2009)………………………………..……………..……….    18

Treppel v. Biovail Corp.,
    233 F.R.D. 363, 374 (S.D.N.Y. 2006)………………………………….…………….    16, 17

Trzeiak v. Apple Computers, Inc.,
    No. 94 Cv. 1251, 1995 WL 20329 at *7 (S.D.N.Y. 1995)…………………………    17, 18

Zubulake v. UBS Warburg, LLC,
    229 F.R.D. 422 (S.D.N.Y. 2004)………………………………………………….....    14, 15, 16


Statutes

Fed. R. Civ. P. 26(a)………………………………………………………….……..    3

Fed. R. Civ. P. 26(f)(3)……………………………………………………….……….    13, 14

Social Services Law § 409-f………………………………………………………    18

*Social Services Law § 446*……………………………………………….……..    4, 18

-iii-

## PRELIMINARY STATEMENT

As the City has complied with all of its basic obligations regarding the exchange and disclosure of discovery, both pursuant to the directives of the Court and the requirements as set forth by Rules 26 and 34 of the Federal Rules of Civil Procedure, it is requested that plaintiff's motion be denied in full and the arguments set forth therein disregarded as moot.  As will be further demonstrated herein, and contrary to the assertions of plaintiff, the City has in fact: (i) identified those person who had the most direct involvement in the child welfare issues of the Rodriguez/Alford family; (ii) searched the files of all individuals likely to possess information relevant to this action; (iii) produced all relevant documents (including ESI)[1] in its possession, custody or control; and (iv) disclosed "meaningful and complete information about the City's electronic databases" pursuant to the specific directives as set forth by the Court on both January 27, 2012 and April 18, 2012.  (*See*, Plt Ex. J at 17:1-4; *See also,* Plt Ex. D at 34:9-35:5 citing the Court's breakdown of what qualifies as "meaningful and complete information.")

Rather than working with the City to resolve outstanding discovery issues, as specifically directed by the Court[2], , plaintiff has instead opted to waste the Court's time by raising issues via motion which have already been addressed by the Court, and by seeking that the City provide discovery that it has already in fact provided.

---

[1] The City initially provided plaintiff with hard copy print-outs of the full contents of the "Connections Database," which is the electronic case file maintained by the State of New York, including electronic case entries made by the defendants.  Following arguments made by the plaintiff that the ESI was not provided in a readily usable format, the City subsequently exchanged the ESI in the format of a searchable PDF file with bookmarks to allow for convenient accessibility and usability.  (*See*, Plt Ex. H at 2; *See also,* City Ex. 2 at 4.).  In addition, now that search terms and production specifications have been provided, the ESI harvested from the five persons identified will be produced by early next week.

[2]  *See*, Plt Ex. J at 16:15-16.

The plaintiff *continues* to assert that the City is aware of additional pertinent parties whose identity and ESI the City refuses to disclose.  However, this matter has already been visited and re-visited by the Court, and a proper review of the record confirms that the City has fully complied with the Court's directives in providing the relevant ESI information with respect to "all of the pertinent players." (*See,* Plt Ex. D at 37:3-8; 38:18.)  Further, despite the Court's most recent directive that the plaintiff notify the City of any additional pertinent parties whose information they would like disclosed, and the City's stated agreement to comply with plaintiff's request for same, plaintiff has made no attempt to reach out to the City with any such request. (*See*, Id. at 38:21-25; *See also,* City Ex. 2 at 3; Plt Ex. H at 1; and Plt Ex. N.).

This Court has now ruled that the depositions will go forward (see Order dated June 14, 2012).  Accordingly, the City Defendants will not address that portion of the motion which seeks to adjourn the depositions.

## ARGUMENT

**I.**     **AS THE CITY HAS COMPLIED WITH ITS OBLIGATIONS BOTH PURSUANT TO THE FEDERAL RULES AND THE DIRECTIVES OF THIS COURT, PLAINTIFF'S MOTION SHOULD BE DENIED**

**A.**     **The City Has Provided Sufficient Rule 26(a) Disclosures**

On October 4, 2011, pursuant to Federal Rule of Civil Procedure 26(a), the City provided its initial disclosures, which identified "each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(i).  (Plt Ex. A at 2.)  Plaintiff asserts that the City's responses were deficient in that they "failed to identify a single employee aside from the named defendants in this action," (Plt Motion at 3), however such a claim is wholly meritless as there is no provision of Rule 26

which requires the identification of a person or persons not party to the subject action.  The Court has confirmed the City's position on this matter by reminding plaintiff that they are not entitled to the identities of "everybody in the [subject] agency," but rather only "those people who are pertinent to the case."  (*See*, Plt Ex. D at 37:1-8).

**B.      The City Has Followed the Directives of the Court in Seeking Out and Producing ESI in a Format that is Readily Usable by the Plaintiff**

On December 7, 2011, the City commenced its production of documents in this case. The City's first production consisted of approximately 2,600 pages of documents, including print-outs of all the electronically stored entries maintained on the "Connections Database."  The Connections Database, as previously stated, is the electronic case file maintained by the State of New York, which includes the electronic case entries made by defendants and non-party service providers.  Pursuant to federal requirements, New York State implemented the use of a "statewide automated child welfare information system."  *See generally* Social Services Law § 446.  In child welfare cases such as this one, the Connections file is the primary ESI.

As explained by the City during the conference with this Court on January 27, 2012, the Connections Database is very old, and as such, despite numerous conversations with its Internet Technology Department, the City faced great difficulty in determining a means of efficiently extracting the ESI relevant to the subject case and providing same to plaintiff in it's native format.  Ultimately, the City was advised by relevant IT personnel that the most efficient course of action would be to print out the relevant entries from the database and exchange hard copies of same.  (*See*, Plt Ex. D at 46:21-47:4).

-4-

Following plaintiff's argument at the January 27th conference however, that the Connections entries were not provided in a readily usable and searchable format, the Court suggested the possibility of plaintiff's counsel visiting an ACS office and personally accessing the Connections terminal to conduct a search for entries relating to the subject case.  (*See*, Id. at 48-50).  In response to the Court's directive, the City took all reasonable strides to determine whether this option would be feasible, however, the City was subsequently informed that it was not.  The City was advised that an individual's access to the Connections Database could not be limited so as to only search for entries involving the Rodriguez/Alford family, which was a concern commented on by the Magistrate during the January 27th conference.  (*See*, Id. at 48:20-49:2).  As explained in the City's letter to plaintiff, dated February 16, 2012, (Plt Ex. H at 1-2), and in the City's letter to the Court, dated March 1, 2012 (City Ex. 2 at 3), electronic access to entries involving a particular family are only able to be restricted to that family for open ACS activities.  Because portions of the Rodriguez/Alford file are closed, providing plaintiffs with access to search the database for the names of the subject parties for example, would allow them to also see confidential information regarding the subject parties, as well as confidential information pertaining to any other party tracked in the database who bears a similar name.  Additionally, if given personal access to the Connections Database, plaintiff would also be able to view information that was redacted in the version originally produced by the City.  (*See*, Id.)

In an additional attempt to satisfy the demands of the plaintiff with regard to this issue however, the City engaged in further communications with relevant Internet Technology personnel and ultimately was able to provide the plaintiff with the subject ESI in the version of a

searchable FDF file, containing bookmarks to allow for convenient usability and search access.  (*See,* <u>Plt Ex. H</u> at 2, *See also,* <u>City Ex. 2</u> at 4.).

**C.**     <u>The City Has Followed the Court's Directives in Identifying Relevant</u>
       <u>Individuals and Providing Essential Information about the ESI in</u>
       <u>Their Possession, Control or Custody</u>

Plaintiff alleges that the City has failed to identify all individuals likely to have discoverable information, and that it has additionally failed to provide basic information regarding "what ESI exists for these individuals." (<u>Plt Motion</u> at 5.)  Once again, plaintiff seems to raise issues which have already been addressed by the Court, and thus plaintiff's arguments with regard to said issues should be deemed moot.

       **1.**     <u>The January 27, 2012 Court Conference</u>

At the January 27th conference, the Court was clear in its directive that the City was to provide plaintiff with the identities of not "everybody in the agency, but [of] those people who are pertinent to the case." (<u>Plt Ex. D</u> at 37.)  The Court made clear that while the ACS defendants would be required to provide information about the nature and availability of ESI for a limited set of "pertinent players," (<u>Id</u>. at 38:17-18), that set "was not necessarily coincident with who received a litigation hold memo." (<u>Id</u>. at 35:15-17).  In elaborating on who might qualify as a "pertinent player" for such purposes, the Court cited "a caseworker" and someone who "dealt with P.A. over the course of his ACS case" as examples. (<u>Id</u>. at 37:5-10).  With regard to the "pertinent players," the Court specifically directed that the City identify "whose [ESI] was available, over what date ranges, and in what kind of storage medium, and how it can be searched." (<u>Id</u>. at 38:13-18).  The Court further directed that if plaintiff's counsel believed any person was missing from the list of "key players" as designated by the City, plaintiff's counsel

-6-

should inform the City.  (Id. at 38:21-24).  The City, in turn, agreed to provide plaintiff with such additional information should plaintiff make a request for same.  (Id.)  Plaintiff has failed to make any such request upon the City to date.

Although the plaintiff has continued to demand that the City produce a list of every ACS custodian whose ESI the City has preserved, (Id. at 32:2-4), the Court has been clear in stating that the City is not under an obligation to produce same.  Specifically, the Court stated that if the City was able to produce someone, such as an IT director, "who could access everyone's email and [explain] how it's stored and what's involved in searching it and what date ranges for each person's email is available to be searched," then that would satisfy the "custodian aspect of [plaintiff's] inquiry."  (Id. at 36:3-7).  At the conclusion of the January 27th conference, the City agreed to produce such an individual, and to provide plaintiff with the relevant information regarding the ESI of the pertinent players as directed by the Court (i.e. "whose [ESI] was available, over what date ranges, and in what kind of storage medium, and how it can be searched.") (Id. at 38:13-18).

## 2.   The City's Actions Following the Conference

Consistent with its agreement, the City subsequently made available to plaintiff's counsel and their IT staff, a member of the New York City Law Department's Litigation Support Unit, Heidi Grygiel.  On February 3, 2012, an informational telephone call took place between plaintiff and the City in which Ms. Grygiel participated.  In preparation for the call, Ms. Grygiel reviewed a transcript of the January 27th discovery conference and came to the informational telephone call prepared to discuss precisely the categories of ESI which the Court identified at

-7-

the discovery conference: what ESI was available for the identified key players; the relevant date ranges of that ESI; the relevant storages locations and media available; and the methods by which such ESI could be searched.  Ms. Grygiel was also prepared to assist plaintiff's counsel in understanding the State-maintained Connections database used by ACS.  (*See,* City Ex. 2 at 2-3.)

Although the City had hoped that this telephone conference would foster an open exchange of information regarding the ESI issues previously discussed at the January 27th conference, plaintiff's counsel quickly turned the telephone session from a collegial, instructive exchange into an adversarial confrontation, for example, among other things, pressing Ms. Grygiel to identify all those to whom preservation letters had been sent – despite the Court's repeated statements that such information was neither relevant nor required to be produced. ( Id.)

Notwithstanding plaintiff's aggressive and counter-productive approach, the City followed up after the telephone conference with two letters to plaintiff's counsel providing the information identified by this Court that plaintiff had failed to cover due to their decision to pursue a more confrontational approach, as well as information newly demanded by plaintiff that ranged beyond those topics previously understood.  Specifically, the City's letter of February 9, 2012, provided plaintiff's counsel with the court directed ESI information for the five key custodians who had primary contact with the family (Robert Salemi, Natalia Rosado, Zanette Sargeant, Deborah Pride and Rose Sosa).  (*See*, City Ex. 1 at 2-3.)  The information provided was in full compliance with the directives of the Court (as stated in Plt Ex. D at 38:13-18), in that it set forth "whose ESI was available, over what date ranges, in what kind of storage medium,

-8-

and how it can be searched." (*See*, City Ex. 1 at 2-3.)  The City additionally included in their

letter of February 9th, information regarding the back-up policies for ACS e-mail and file servers,

as such information was additionally sought by the plaintiff during the parties' telephone

conference on February 3rd.  (Id. at 1-2.)

The second letter sent by the City to plaintiff's counsel, dated February 16, 2012, (Plt Ex.

H), provided the plaintiff with additional information regarding the requested ESI and the

Connections database.  (*See*, Id.)  Along with the letter the City additionally enclosed the

October 2011 Connections printout in the form of a searchable PDF file saved to a disc.  The

City informed the plaintiff that the individual documents within the PDF file were broken up by

bookmarks.  (Id.)  The City informed the plaintiff that, "as the PDF version was fully searchable,

even within the case notes, in contrast to the data actually housed natively within the

Connections database which has limited search and reporting functions," the production of the

PDF was "fully responsive to plaintiff's request."  (Id.)

**D.      The City Served Responses to Plaintiff's Second Set of Interrogatories
         Which Provided all Information as Required under the Federal Rules and the
         Specific Directives of the Court**

On April 16, 2012, two days prior to a follow-up conference with the Court

regarding outstanding discovery issues, plaintiff served a Second Set of Interrogatories upon

defendants seeking much of the same information as previously sought by plaintiff and

addressing many of the same issues as already previously addressed by this Court.  (*See*, Plt Ex.

I.)  For example, plaintiff sought that the City provide: the identity of all persons who may have

had documents or ESI relevant to this action; the identity of all persons whose documents and

-9-

ESI defendants have collected and preserved in connection to this action; the volume and date range of documents preserved or collected; etc.  (*See,* Id. at Interrogatories 1-8.)  As previously stated, the City had *already* followed the Court's directive with regard to most of these matters in identifying the pertinent parties in possession of such documents/ESI, and providing the requested information regarding what was contained in such documents/ESI.  (*See,* City Ex. 1 at 2-3).

During the April 18, 2012 Court conference following plaintiff's service of these Interrogatories, the Court addressed the specific Interrogatory requests of the plaintiff which, at that juncture, sought information not duplicative of information already provided by the City. Specifically, the Court stated that the City needed to provide the plaintiff with "real, meaningful and complete information about the electronic databases, what happened to the data or information that they contained, and access to what they contained." (Plt Ex. J at 1-4.)

The City served its Responses to Plaintiff's Second Set of Interrogatories on May 16, 2012.  (Plt Ex. K.)  Plaintiff contends that the City's Responses failed to provide "basic and necessary information," and merely consisted of a "litany of meritless objections," (Plt Motion at 8),  however a proper review of the City's Responses reveals that plaintiff's contentions are grossly exaggerated, if not blatantly untrue.  The City's Interrogatory Responses ultimately provided all outstanding information as sought by plaintiff's interrogatories, pursuant to the directives of the Court, and falling within the scope of discovery as previously approved by the Court at the January 27th and April 18th Court conferences.

The City complied with the Court's directive to provide "real, meaningful and complete

information about the electronic databases" via its Responses to Interrogatories 11 - 27.  (*See,* Plt Ex. K. at ¶¶ 11-27: setting forth all information sought by plaintiff regarding the electronic databases, programs used by ACS, the accessibility of the programs, policies regarding email storage, document retention/backup and related subjects.)

The City complied with the Court's directive to provide information regarding "what happened to the data or information contained in the electronic databases" via its Responses to Interrogatory #2: *(defendants respond that they have preserved the ESI of the five key players previously identified);* Interrogatory #4: *(all ESI have been preserved of those persons who received the hold memorandum);* Interrogatory #7: *(the data has been collected and is being preserved);* Interrogatory #8: *(there is no disparity in the ESI as all documents have been preserved for the five key players);* Interrogatories #9-10: *(defendants are not aware of any ESI that has been destroyed).*  (*See,* Id. at ¶¶ 2, 4, 7, 8, 9-10.)

The plaintiff raises particular issue with the supposed deficiencies of the City's Responses to Interrogatories 1 – 8, (*See,* Plt Motion at 7), specifically with regard to the City's alleged failure to provide information regarding parties aside from the previously identified "five key players."  However, as further described below, plaintiff's argument regarding this matter should be deemed moot, as the Court has already addressed this issue at the January 27th Court conference and directed the plaintiff to inform the City of any other party which the plaintiff deems pertinent.  Plaintiff has, however, chosen not to do so.

**E.** **Plaintiff Failed to Follow the Court's Directive in Providing the City with Any Additional Names of Individuals Believed to be "Pertinent Players"**

As previously stated, during the January 27, 2012 Court conference, the Court directed the City to provide information about the nature and availability of ESI for a limited set of "pertinent players." (Plt Ex. D at 38:17-18). The Court further directed that if plaintiff's counsel believed any person was missing from the list of "key players" as designated by the City, plaintiff's counsel should inform the City of the names of those individuals. (Id. at 38:21-24). The City, in turn, agreed to provide plaintiff with such additional information should plaintiff make a request for same. (Id.) Plaintiff has failed to make any such request upon the City to date. Plaintiff's failure to provide the City with such information can only be seen as a deliberate attempt to stall depositions and the completion of discovery, particularly in light of the fact that plaintiff wrote the Court on January 20, 2012 stating that they had "conducted a cursory review of the documents produced by the City," and noticed that certain pertinent individuals were identified in those documents whose names the City had failed to disclose. (See, Plt Ex. F at 3). As plaintiff had in their possession at that time, the names of certain individuals who they believed would be likely to have discoverable information, and as the Court subsequently directed that plaintiff provide such names to the City if they wished to obtain information about the nature and availability of those individuals' ESI, then plaintiff's failure to provide the City with those names[3] for a period of nearly five months can only be seen as an effort to stall discovery. As such, plaintiff's argument regarding this matter should also be deemed moot.

-12-

---

[3] The City defendants have also begun the process of providing ESI for those five additional City witnesses whose depositions the three plaintiff firms have requested (Nixon, Okon, Scott, McLaughlin and Lofton) using the search terms recently exchanged.

**F.**   **Plaintiff Failed to Provide the City with Suggested Search Terms and Parameters to be Utilized in Tailoring the Scope of any Additional ESI Exchanged by the City**

Finally, the plaintiff has made a number of allegations within their motion stating that the City has failed to produce *any* ESI in this case.  (*See,* Plt Motion at 2 and 3.)  As previously stated, New York State implemented the use of the Connections database pursuant to federal requirements requiring that a "statewide automated child welfare information system" be put into place.  *See generally* Social Services Law § 446.  As such, in child welfare cases such as this one, the Connections file is the primary ESI, and the City provided plaintiff with hard-copy printouts of the full contents of the Connections file back in December 2011.  Further, following arguments made by the plaintiff that the Connections file was not provided in a readily usable format or in the format maintained, the City subsequently exchanged the Connections file in the format of a searchable PDF with bookmarks to allow for convenient usability and search access. (*See*, Plt Ex. H at 2; *See also,* City Ex. 2 at 4.)

The plaintiff's contention that the City has failed to provide ESI for the "five pertinent players" is wholly baseless, as the City is not, and has never been opposed to providing such ESI. The City notified plaintiff via written correspondence back in January 2012 that pursuant to Federal Rule of Civil Procedure 26(f)(3), plaintiff and the City were required to confer and reach a discovery plan which set forth the limitations and parameters to be applied to the search and disclosure of the electronically stored information.  Fed. R. Civ. P. 26(f)(3).  (*See*, Plt Ex. G at 2; *See also*, Plt Ex. J at 27:5-7: referencing the need to negotiate a search protocol).  In addition, to specifying the subjects, or search terms, to be used in tailoring the electronic disclosures, Rule 26(f)(c) also calls for the parties to reach an agreement on the form or forms in which the

-13-

electronically stored information should be produced. Fed. R. Civ. P. 26(f)(3)(C). Despite having had five months to provide the City with their suggested parameters, search terms and format/production specifications, plaintiff has only just provided their search terms to the City on June 8, 2012 (ironically on the same day that they served the instant motion). (*See,* City Ex. 3.) Plaintiff subsequently provided the City with their production specifications on June 11, 2012, only four days ago. (*See,* City Ex. 4.)

As the plaintiff chose to ignore the repeated requests of the City to amicably confer and agree on the search and production protocol to be applied to the disclosure of ESI, (*See,* Plt Ex. N), and has rather opted to waste the time of his parties, as well as that of this Court, by seeking discovery through motion practice which could have been readily provided to him over the course of the past five months had he followed the directives of the Court, it is requested that plaintiff's motion be denied in its entirety.


**II.  THE CASES RELIED UPON BY PLAINTIFF ARE DISTINGUISHABLE AND PLAINTIFF'S RELIANCE THEREUPON IS THUS UNFOUNDED**

**A.  The City Has Complied With the Disclosure Obligations as Set Forth By the Court in Zubulake and As Such Plaintiff's Reliance on Same is Misplaced**

In support of his argument that the City should be compelled to search for and produce potentially relevant documents and ESI for all custodians, plaintiff first cites the case of Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004). Plaintiff specifically cites to Zubulake in asserting that "once a party and her counsel have identified all of the sources of potentially relevant information, they are under a duty to retain that information… and to

-14-

produce information responsive to opposing party's requests. (Id. at 432-33). First, the City does

not propose to argue with this widely accepted rule of discovery. On the contrary, the City

asserts that it has in fact complied with this obligation within the scope of the directives as set

forth by this Court. As previously stated herein, the Court has had an opportunity to hear

plaintiff's arguments regarding this issue, and at the conclusion of same, the Court set forth the

directive that the ACS defendants would be required to provide information about the nature

and availability of ESI for a limited set of "pertinent players," (Plt Ex. D. at 38:17-18), citing as

examples, "a caseworker" and someone who "dealt with P.A. over the course of his ACS case."

(Id. at 37:5-10). With regard to the "pertinent players," the Court specifically directed that the

City identify "whose [ESI] was available, over what date ranges, and in what kind of storage

medium, and how it can be searched." (Id. at 38:13-18). As previously set forth herein (at pg. 7-

8), the City complied fully with these obligations. Further, the Court in Zubulake made a point

of noting that all relevant information must be discovered, "or at least all sources of relevant

information." (Id. at 432.) As previously set forth, the City has searched the files of all

individuals likely to possess information relevant to this action and produced thousands of

relevant documents (including ESI) to plaintiff. As plaintiff asserted to this Court nearly five

months ago, it was his review of the City's produced documents which led him to identify other

potentially pertinent individuals whom the City had not previously identified. (See, Plt Ex. F at

3.) As such, it is clear that all of the different sets of documents provided by the City have

served as sufficient sources of any additional information that plaintiff might deem relevant to

this action, including the names of any additional pertinent parties. Thus, the City has in fact

-15-

complied with its disclosure obligations as set forth by the Court in <u>Zubulake</u>.

In addition, as stated a number of times herein, any fault that plaintiff seeks to impose for his lack of discovery regarding other potentially relevant custodians may only be placed on himself, as he has had five months to inform the City of any other pertinent parties pursuant to the Court's directive on January 27, 2012.  (*See,* <u>Plt. Ex. D</u> at 38:21-24.).

**B.      Plaintiff's Reliance on Treppel is Misplaced as the City Has in Fact Produced Documents (Including ESI) Which Are Responsive to Plaintiff's Requests**

As previously argued by the City herein, the City has not responded to plaintiff's request for the specific ESI of the five identified pertinent players for one singular reason – plaintiff has failed to propose a search protocol to be applied to such electronic disclosures as is required under F.R.C.P. 26(f)(3).  The City notified plaintiff via written correspondence back in January 2012 of the requirements of Rule 26(f), and requested that we confer and reach a discovery plan setting forth the parameters (i.e. search terms and format/production specifications) to be applied to the search and disclosure of the electronically stored information.  Fed. R. Civ. P. 26(f)(3).  (*See,* <u>Plt Ex. G</u> at 2.)  Despite having had five months to provide the City with same, the plaintiff ignored the repeated requests of the City to amicably confer and agree on the search and production protocol to be applied, that is, up until a few days ago.  (*See,* <u>City Exs. 3 and 4</u>.)

Plaintiff cites the case of <u>Treppel v. Biovail Corp</u>., 233 F.R.D. 363 (S.D.N.Y. 2006) in an attempt to establish that a party is obligated to produce all relevant information and documentation even where the requesting party does not propose a search protocol.  (*See,* Plt Motion at 10.)  Plaintiff's reliance on <u>Treppel</u> in support of this argument is misplaced however,

-16-

as the defendants in <u>Treppel</u> failed to produce "any responsive documents whatsoever." (<u>Treppel</u> at 374.) Here the City produced thousands of responsive documents prior to requesting that a search protocol be proposed with regard to certain ESI. Indeed, the ESI of the pertinent players contain electronic data on all the families with whom they interact, not just the Rodriguez/Alford family. Certainly plaintiff cannot expect the City to produce non-relevant confidential information of other families.

**C.**     **<u>In Seeking that the City Disclose the Identities and ESI Information for ALL Custodians (as Sought by Plaintiff's Interrogatories 1-8), Plaintiff Relies on Cases Which are Distinguishable From the Instant Case</u>**

In seeking that the City provide additional responses to Plaintiff's Interrogatories 1-8 setting forth the identities and ESI information for *every* custodian in this action, (despite the Court's directive that the City is not obligated to do so), plaintiff relies on case law that is both misplaced and distinguishable. In support of his argument that "courts routinely order parties to provide this type of information" - i.e. the identification and information of every custodian, (Plt. Motion at 12), plaintiff cites the case of <u>Trzeciak v. Apple Computers, Inc.</u>, No. 94 Civ. 1251, 1995 WL 20329, at *7 (S.D.N.Y. Jan. 19, 1995). The facts in <u>Trzeciak</u> are distinguishable from those of the instant case however, in that in <u>Trzeciak</u>, which was a complex products liability case. (*See*, <u>Id</u>. at *1.) Due to the complexity of the case, plaintiff served extensive discovery

-17-

demands including "sixty-six document requests and fifty-five interrogatories," (Id.), and unlike the City in the instant case, the defendants in Trzeciak objected to, and failed to provide responses to the majority of them.  (*See,* Id.)  Further, contrary to the instant case, plaintiff's interrogatories in Trzeciak sought "the identity of 'the custodian' (singular) of *specified categories of documents.*"  (Id. at *7.)

    First, unlike Trzeciak, a complex products liability case involving a number of different claims based on a number of different theories of liability, the instant case involves one primary category of relevant documents – namely, those which relate to the plaintiff's case with ACS. While the plaintiff in Trzeciak sought that defendants identify *one custodian* for each individually specified category of documents, here, the plaintiff has made one sweeping request for all custodians of one broad category of documents.  To that end, the City has provided plaintiff with the identities and relevant ESI information for the five parties deemed to be the most pertinent custodians with regard to the specific category of documents that is relevant to the instant case.  And unlike products liability or securities litigation, the record keeping in the child welfare world is generally regulated by statutes, *e.g.* Soc. Services Law §409-f (uniform case records), 446 (Connections).  As  such, the instant case is distinguishable from Trzeciak and plaintiff's reliance on same should be therefore disregarded.

    Plaintiff is similarly misguided in his reliance on the case of Capitol Records, Inc. v. MP3tunes, LLC, 261 F.R.D. 44 (S.D.N.Y. 2009).  Specifically, the Court in Capitol Records, Inc. ruled that "because it may not be self evident who [the requested custodians] are, *the EMI*

*labels are directed to produce documents sufficient to enable MP3tunes to identify [the*

*requested custodians.]"*  It is unclear why plaintiff seeks to cite such case law in support of his

argument, as the City *has already* produced documents sufficient to enable plaintiff to identify

any custodians not thus identified by the City.  (*See,* Plt Ex. F at 3.)  The plaintiff, however, has

failed to inform the City of any additional custodians whose information they wished the City to

produce, and in that failure has displayed sheer disregard for the Court's prior directive to do so.

## CONCLUSION

It is respectfully requested that the motion be denied in all respects.

Dated:  New York, New York
        June 15, 2012

                  BARRY, MCTIERNAN & MOORE

                  By:_____*Suzanne M. Halbardier*_____
                  SUZANNE M. HALBARDIER, ESQ.
                  Attorneys for Defendants
                  **THE CITY OF NEW YORK**
                  **(the "CITY"), JOHN MATTINGLY,**
                  **DEBORAH PRIDE,NATALIA**
                  **ROSADO, ROSA SOSA, and**
                  **ROBERT SALEMI**
                  2 Rector Street, 14th Floor
                  New York, New York 10006
                  (212) 313 - 3600
                   File No.: NYC54816

**CERTIFICATE OF SERVICE**

Suzanne M. Halbardier, an attorney duly admitted to practice law in the State of New York, hereby certifies that a true and accurate copy of the attached Memorandum Of Law was served by ECF on June 15, 2012 to:

Robert Alexander Osuna, Esq.
Ambrose Wotorson, Esq.

Skadden Arps Slate Meagher & Flom LLP
Attorneys for Plaintiffs

Charles E. O'Bryan, Esq.
Jones, Hirsch, Connors & Bull, P.C.
Attorneys for Defendants St. Vincent's Services, Inc.

LAW FIRM OF JAMES R. LAMBERT, ESQ.
Attorney for Plaintiff
**PATRICK ALFORD, SR. and "J.A."**
1491 Richmond Road
Staten Island, NY  11242-1118

_____*Suzanne M. Halbardier*_____
SUZANNE M. HALBARDIER

-20-